TOWNSHIP OF ZILWAUKEE *v.* SAGINAW-BAY CITY RAILWAY CO.

1. Contracts — Construction — Evidence — Parol Evidence — Written Contracts.
   The terms of a written contract cannot be altered or enlarged by proof of contemporaneous or previous oral agreements upon the subject.

2. Same—Construction—Ambiguous Contracts.
   There is no room for construction or explanatory evidence of the unexpressed intention of the parties where the wording of a written contract between them is not obscure or ambiguous.

3. SAME—PATENT AMBIGUITY.

A patent ambiguity is one apparent upon the face of the instrument, arising by reason of inconsistency, obscurity, or an inherent uncertainty of the language adopted, such that the effect of the words in the connection used is either to convey no definite meaning or a double one.

4. SAME—LATENT AMBIGUITY.

A latent ambiguity is defined as one which arises not upon the words of the will, deed, or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe.

5. SAME—EXTRINSIC EVIDENCE—LATENT AMBIGUITY.

Extrinsic evidence is not, as a rule, admissible to explain or remove a patent ambiguity, but is admissible to show a latent ambiguity, if one exists, and to remove it.

6. SAME—OMISSION OR MISTAKE NOT AMBIGUITY.

An omission or mistake is not an ambiguity.

7. SAME — FRANCHISES — CONSTRUCTION — STREET RAILWAYS — AMBIGUITY.

A franchise contract between a township and a street railway company, to construct a railway through said township, and providing that the rate of fare through said township should not exceed five cents per passenger per trip "from the township of Zilwaukee to Genesee avenue in Saginaw," held, not ambiguous for failure to state the exact point on Genesee avenue where transportation was to begin and end.

8. SAME—PRACTICAL CONSTRUCTION CONTROLLING ONLY WHERE AMBIGUOUS.

Practical interpretation by the parties can only be regarded where the contract is of doubtful or ambiguous meaning.

9. SAME—PRACTICAL CONSTRUCTION NOT CONTROLLING TO CHANGE UNAMBIGUOUS CONTRACT—INJUNCTION.

There being nothing doubtful in the wording of the franchise contract between plaintiff township and defendant street railway company as to the rights of passengers thereunder, the fact that defendant had, for 23 years, been carrying passengers farther for the fare provided therein than required, held, not to entitle plaintiff to an injunction restraining defendant from charging extra fare beyond the point where defendant's railway intersects Genesee avenue in said city of Saginaw.

Appeal from Saginaw; Snow (Ernest A.) and Brown (Clarence M.), JJ. Submitted October 13, 1920. (Docket No. 71.) Decided February 3, 1921.

Bill by the township of Zilwaukee against the Saginaw-Bay City Railway Company to enjoin an increase of rates of fare. From an order denying a motion to dismiss and granting a temporary injunction, defendant appeals. Reversed, and bill dismissed.

*Frank A. Rockwith,* for plaintiff.

*Weadock & Weadock,* for defendant.

STEERE, C. J. This controversy involves the right of defendant to charge passengers to and from Zilwaukee township additional fare within the city of Saginaw beyond where its interurban line from the north intersects Genesee avenue on the west side of Saginaw river. Defendant owns and operates an interurban electric railway line running on the west side of Saginaw river between Saginaw and Bay City. It passes through the township of Zilwaukee, which lies immediately north of Carrollton township, which joins the city of Saginaw on the north. It also owns and operates urban street railways in the cities of Saginaw and Bay City under franchises from said municipalities. The present city of Saginaw lies on both sides of the Saginaw river and includes the two former municipalities known as the city of Saginaw and city of East Saginaw, separated only by the Saginaw river which was the boundary line between them. A thoroughfare known as Genesee avenue runs east and west across the northern portion of the west side and continues east across the river into and through the east side, continuing east for some distance and then diverging to the southeast within the city and is said to be crossed or intersected by 23 streets. On the east

side, running northeasterly and southwesterly, nearly parallel with the river, Washington avenue intersects Genesee. A well-known hotel named the Bancroft House was located at the southwest corner of this intersection. On the west side somewhat further back from the river and also running practically parallel with it a main thoroughfare called Michigan avenue intersects Genesee avenue also.

Defendant's line operates through the township of Zilwaukee under a franchise right granted its predecessor by the township authorities in 1894, to which it succeeded. The franchise was granted to three applicants named Frank E. Snow, William Jackson and John W. Nicol, who in their proposition and application to the Zilwaukee township authorities, presented for them by one Hart, said their purpose was—

"the construction of an electric street railway, from the city of Saginaw to the city of West Bay City, Michigan, upon the west side of the Saginaw river, and respectfully ask your honorable board to grant, convey and quitclaim to them, their successors and assigns, the exclusive and perpetual right to construct, maintain and operate said railway with all necessary wires, poles, fixtures, conduits and appliances whatsoever with the right to collect a rate of fare of five cents per passenger per trip in and through said township, upon and along the following route, that is to say: Beginning at the northerly boundary of the village of Carrollton, running thence northerly along the Saginaw road or Westervelt avenue and through private lands to the township of Kochville or the northerly boundary of said township of Zilwaukee."

By a resolution with introductory recitals in which it was said, "the construction of said railway is deemed to be a valuable improvement to the property along said road and to the township aforesaid," the "prayer of said petition" was granted on September 12, 1894, with the following paragraph as to rates, which is the subject of controversy here, added:

"It is agreed between the parties that the rate of fare on said railway through said township shall not exceed five cents per passenger per trip, 'from the township of Zilwaukee to Genesee avenue in Saginaw,' except that after 12 o'clock p. m. double fare may be charged."

Defendant's interurban line extending south into the city of Saginaw first touches Genesee avenue at the corner of Michigan and Genesee avenues on the west side of the river.

It appears that up to shortly before November 4, 1919, defendant had not charged any extra fare within the city limits beyond the intersection of its interurban line with Genesee avenue to Zilwaukee passengers who desired to begin or end their trip at the corner of Washington avenue and Genesee avenue on the east side of the river near the Bancroft House; but thereafter it took steps to and did collect an additional fare on the street railway within the city limits from those desiring to ride beyond where the interurban line at Michigan avenue connected with Genesee avenue on the west side of the river, claiming the right so to do under its city franchise and the laws of the State.

Plaintiff thereupon filed this injunction bill to restrain defendant from charging more than a five-cent fare to interurban passengers on its line between any point within its township limits and the Bancroft House, claiming that the Zilwaukee franchise as understood and agreed upon between the parties and as construed in practical application made the Bancroft House the southern terminal of the interurban line for such passengers without extra charge. On filing the bill plaintiff made application for a temporary injunction. Defendant appeared and made a motion in the nature of a demurrer to dismiss the bill of complaint on various grounds; also answered and opposed the

213—Mich.—5.

motion for a temporary injunction in case its motion to dismiss did not prevail. The legal questions involved were argued both as a demurrer on said motion to dismiss and on the pleadings supported by affidavits. The court overruled defendant's motion to dismiss and granted plaintiff's motion for temporary injunction. Defendant took an appeal by permission of this court from denial of its demurring motion to dismiss plaintiff's bill, and also appealed from the order granting a temporary injunction. The two appeals were heard together.

Defendant urges that the written franchise granted by plaintiff township to Snow, Jackson and Nicol is clear, plain and unambiguous both in stating the rate of fare and in fixing the terminal point to and from which Zilwaukee passengers would be carried for that price at the intersection of its line with Genesee avenue, and is therefore not subject to be changed by parol or extraneous evidence, that no allegation appears in the bill of complaint of Hart's authority as agent to make a franchise contract other or different than the written one made and signed by the parties, for which reasons its motion to dismiss should have been granted; that the mere fact defendant in more auspicious times did not exact from its passengers to and from Zilwaukee an additional fare within the city limits was not as a proposition of law a practical construction of the franchise and it did not thereby surrender any of its rights under the same, that the order granting a preliminary injunction is an adjudication upon the entire matter in difference and in its nature a final disposition of the case.

On the part of plaintiff it is contended that the order granting a preliminary injunction was discretionary and there was no abuse of discretion, that it only maintains the *status quo* between parties, does not divest defendant of any legal right, is not final and

therefore not appealable, that the application was supported by affidavits and therefore not defective because based on information and belief; that it is not sought by affidavit or other extraneous evidence to change the franchise provision in question, but such proof is offered in explanation of its ambiguity, the provision as to fares being ambiguous because in it the point on Genesee avenue where the interurban transportation is to begin and cease is not fixed, and the same has been construed by defendant, and all parties in interest, for the past 23 years as meaning the Bancroft House.

At least the best, if not the exclusive, proof of the franchise contract of 1894 upon which plaintiff relies for an injunction is the evidence put in writing by the parties at the time. Hart as agent of the three parties to whom it was granted presented their petition therefor in writing to the township board. It asked for a franchise, or the right, to construct a portion of its continuous interurban line between the city of Saginaw and West Bay City, "on the west side of the Saginaw river," through Zilwaukee township along a described route, "with the right to collect a rate of fare of five cents per passenger per trip in and through said township." The township board by a preamble and resolution in writing, called "this franchise," reciting essential features of the proposition and its desirability and value to the township, granted the "prayer of said petition" as offered, except that it extended the distance passengers should be carried for five cents beyond a trip through Zilwaukee township, as the petition proposed, to a continuous ride from said township through Carrollton township "to Genesee avenue in Saginaw." This franchise, granted plaintiff September 12, 1894, with plaintiff's modifying paragraph requiring a longer ride for their proposed rate of fare added, was accepted by the peti-

tioners on September 19, 1894, and became a binding contract in writing between the parties. Nowhere in the petition or franchise is the Bancroft House or the east side of the river mentioned, or any suggestion of an intent to include transportation to any place in the city along Genesee avenue or any other street on the city line after Genesee was reached. The accepted proposition was for a line between the two cities on the west side of the river, and "Genesee avenue in Saginaw" was on the west side of the river. Failure to specify an exact spot on that street would not affect the validity of the agreement. That provision of the contract was plain, binding and capable of being fully performed as it read. That it did not include other, or more specific, provisions which the parties may have had in mind, or even orally agreed upon, in no sense makes it ambiguous. It is elementary that the terms of a written contract cannot be altered or enlarged by proof of contemporaneous or previous oral agreements upon the subject. There is no room for construction or explanatory evidence of the unexpressed intention of the parties where the wording of a written contract between them is not obscure or ambiguous.

Of the claimed ambiguity it is said in the briefs of plaintiff's counsel that the provision as to fares "is ambiguous because the point in Genesee avenue where transportation is to begin and to cease is not fixed," which, it is further said, "renders the franchise indefinite, obscure and creates a latent ambiguity, because in view of the allegations of the bill one cannot tell from the franchise itself what particular part of Genesee avenue patrons of the road were to be conveyed to" and therefore extraneous proof was admissible to clear this uncertainty by showing what the parties actually meant, said and agreed upon at the time.

A patent ambiguity is one apparent upon the face of the instrument, arising by reason of inconsistency, obscurity or an inherent uncertainty of the language adopted, such that the effect of the words in the connection used is either to convey no definite meaning or a double one. As opposed to a patent ambiguity, a latent ambiguity is defined as one—

"which arises not upon the words of the will, deed, or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe." Black's Law Dictionary.

Extrinsic evidence is not as a rule admissible to explain or remove a patent ambiguity. It is admissible to show a latent ambiguity if one exists and to remove it.

Plaintiff's proposition as to a shown latent ambiguity is stated in counsel's brief as follows:

"The language of the franchise, viz.: 'from the township of Zilwaukee to Genesee avenue in Saginaw,' upon its face may seem perfectly plain, but by an examination of the bill of complaint it appears that Genesee avenue extends for a distance of one and a half miles, lies partly upon the east and partly upon the west side of the Saginaw river, is intersected by 23 intersecting streets, and this collateral matter makes the meaning of the language of the franchise uncertain, because from the franchise itself it does not appear what particular part or point of Genesee avenue is intended."

And the removal or "interpretation" of the disclosed latent ambiguity is claimed to be shown by the statement in its bill, supported by affidavits, that at the time the franchise was granted the agent of the three grantees represented—

"that they proposed to and would lay their tracks so that after entering the city limits of the city of Saginaw on the west side of the Saginaw river that their said railway would cross said Saginaw river to the

east side thereof, and from such crossing point would extend to Genesee avenue at a point in the immediate vicinity of the Bancroft House hotel situated at the corner of Genesee and Washington avenues in the city of Saginaw, on the east side of said river, and that all passengers traveling upon the road would in any event be entitled to ride to the east side of the Saginaw river to Genesee avenue at a point at or near the Bancroft House hotel, at the corner of Genesee and Washington avenues in the city of Saginaw, Saginaw county, Michigan, for a fare of not to exceed five cents per passenger, except," etc.

It is apparent that the language of the franchise under consideration is in itself free from ambiguity. Plaintiff's counsel admit that "upon its face, it may seem perfectly plain." The extraneous facts admittedly existing at that time, by which it is proposed to show a latent ambiguity, create no doubt or difficulty as to a proper application of the language quoted to the subject-matter of the contract or its capability of performance according to the plain meaning of the words used. The subject-matter of the petition and franchise was an interurban railway on the west side of the Saginaw river to run between West Bay City and Saginaw, passing through Zilwaukee township, carrying passengers through and from said township "to Genesee avenue in Saginaw," for a five-cent fare. The railway was to be, and the city with the avenue in it both were, on the west side of the river. The language of the written franchise certainly expressed, then as now, in simple, non-technical language a legal obligation capable of performance without any uncertainty as to the object or extent of the engagement which nowhere in its scope crossed to the east side of the river nor mentioned any such place as the Bancroft House. The paragraph providing a longer ride for five cents than the petition proposed was plaintiff's, put by it in the franchise it granted. It was as simple and easy to insert "Bancroft House" as "Genesee

avenue" if that was the oral agreement.    An omission
or mistake is not an ambiguity.    Parol evidence under
the guise of a claimed latent ambiguity is not permis-
sible to vary, add to or contradict the plainly expressed
terms of this writing or to substitute a different con-
tract for it to show an intention or purpose not there-
in expressed.    The principles of law applicable to the
situation here are concisely summed up, with citation
of  abundant  sustaining  authority,  in  the  following
texts:

"The rule that where an ambiguity is created by
parol it may be removed by parol, was never intended
to violate the rule that a writing shall not be contra-
dicted or explained by inferior testimony."    22 Corpus
Juris, p. 1194.

"It is a general rule that where the words of any
written instrument are free from ambiguity in them-
selves, and where external circumstances do not create
any doubt or difficulty as to the proper application of
those words to claimants under the instrument, or the
subject-matter to which the instrument relates, such
instrument is always to be construed according to the
strict, plain, common meaning of the words themselves,
and that in such case evidence *de hors* the instrument,
for the purpose of explaining it according to any sur-
mised or alleged intention of the parties to the instru-
ment, is utterly inadmissible.    In short, the words of
an instrument, unambiguous in themselves, cannot be
controlled by proof that the parties used them with a
definite and limited meaning, for the purpose of that
particular instrument."    10 R. C. L. p. 1070.

Plaintiff's contention that the practical construc-
tion put upon this franchise contract by the parties
themselves is controlling against the strict construc-
tion now contended for, is necessarily predicated upon
the proposition that the writing is open to construc-
tion in the particular claimed, for practical interpre-
tation by the parties can only be regarded where the
contract is of doubtful or ambiguous meaning.    Ex-

traneous evidence is not allowable to interpret a writing which has no need of interpretation.

"If clear and free from ambiguity, the intention shown upon its face if written must be followed, though contrary to the practical interpretation of the parties, and even if such practical construction has been acquiesced in for a long period of time." 2 Page on Contracts (1905), § 1126.

"Before any appeal can be made to practical construction, it must appear that the meaning is doubtful." *Fairbank* v. *United States*, 181 U. S. 283, 311 (21 Sup. Ct. 648).

We find nothing doubtful in the meaning of the phrase "from the township of Zilwaukee to Genesee avenue in Saginaw" in the connection used as a part of the franchise contract.

This is purely an injunction bill. No legally tenable ground is shown in the bill itself or the affidavits filed in its support against the plain and explicit wording of the contract which clearly expresses the rights and duties of the contracting parties.

The temporary injunction will be dissolved and plaintiff's bill dismissed, with costs to defendant.

MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.