*In re* MALONEY TRUST

Docket No. 70868. Argued April 2, 1985 (Calendar No. 1).—Decided
November 22, 1985.

The First National Bank and Trust Company of Michigan,
trustee of an *inter vivos* trust established by Jane Gilmore
Maloney for her grandchildren, brought an action in the Kala-
mazoo Circuit Court, seeking a declaration of the rights of
certain children adopted by a son of the settlor to participate as
beneficiaries of the trust. The action was treated as a petition
for instructions and was transferred to the Kalamazoo County
Probate Court. The probate court, James S. Casey, J., recog-
nized the statutory presumption that adopted children are
included· within the term "grandchild" used in a will or trust
unless it appears from the terms of the instrument that they
are to be excluded, but held that in this case the settlor
intended to exclude adopted grandchildren by the use of the
words "born" and "date of birth" in the trust instrument. The
Court of Appeals, V. J. BRENNAN, P.J., and D. E. HOLBROOK, JR.,
and ERNST, JJ., affirmed in an unpublished opinion per curiam
(Docket No. 60145). The guardian ad litem of the adopted
grandchildren appeals.

In opinions by Justice CAVANAGH, joined by Chief Justice
WILLIAMS and Justice LEVIN, and by Justice RYAN, joined by
Chief Justice WILLIAMS and Justice LEVIN, the Supreme Court
*held:*

The term "grandchildren" in a trust agreement includes
adopted persons, absent an affirmative intent to the contrary.
Although the wording of the trust instrument in this case is
ambiguous, no intention to exclude adopted grandchildren is
expressed, and thus the presumption including adopted persons
controls.

1. In construing a trust instrument, the intent of the settlor
at the time the instrument was created must be ascertained
and carried out as nearly as possible. Intent should be gleaned
from the instrument unless ambiguity is present. Where ambi-

REFERENCES FOR POINTS IN HEADNOTES
[1-4] Am Jur 2d, Trusts §§ 135-146.
See the annotations in the ALR3d/4th Quick Index under Trusts.

guity is present, a court may establish intent by considering circumstances surrounding the creation of the trust and rules of construction. Under the Revised Probate Code, the term "grandchildren," when used in a trust instrument, includes adopted persons unless a contrary intention appears by the terms of the instrument.

2. In this case, the trust instrument is not clear and unambiguous. However, in construing the instrument, the Court of Appeals and the probate court attached undue importance to the use of the terms "born" and "date of birth" in the trust instrument. The terms simply appear to be convenient ways of explaining the mechanics of administering the trust and are not clearly indicative of an affirmative intent to exclude adopted children. At the time the trust was executed, there were no adopted grandchildren, and it is most likely that the settlor simply did not consider that possibility. Absent an express intent to exclude, the adopted grandchildren are to be treated like any other grandchildren and are entitled to equal funds under the terms of the instrument.

Justice RYAN, joined by Chief Justice WILLIAMS and Justice LEVIN, concurring, stated that under the provisions of the Revised Probate Code, the language of the trust is to be examined to determine whether the settlor expressed an intention that her later adopted grandchildren were not to be considered beneficiaries of the trust. Careful scrutiny of the instrument reveals nothing in the language which would remotely suggest that the slightest consideration was given to including or excluding her later adopted grandchildren or even that she adverted at all to the possibility of grandchildren by adoption. In using the words "born" and "date of birth" in the trust, the settlor and her scrivener employed common, familiar, and convenient terms to describe the mechanics of the administration of the trust. They were establishing a method, by reference to an event the settlor did consider probable, for the orderly and uniform subdivision of the trust corpus to provide equal treatment of all her grandchildren. Only by the most strained and unfriendly interpretation of the trust instrument can it be concluded that Mrs. Maloney intended to foreclose her later adopted grandchildren from sharing to the same extent as their cousins.

Justice BRICKLEY, joined by Justice LEVIN, concurring in the result, stated that the terms "born" and "date of birth" are neutral with regard to whether the adopted grandchildren were to be included as beneficiaries of the trust. Even after applying the Revised Probate Code to interpret "grandchild" to include

adopted grandchildren, a literal reading of the remainder of the trust instrument would still exclude adopted grandchildren because they were not born between the trust's initial division date and its final division date. However, when the instrument is scrutinized further, a literal reading of the words "born" and "at birth" disclose ambiguity—one paragraph would include the grandchildren, while another would exclude them—and would bring about an unintended result. Where there is ambiguity, it is the Court's responsibility to interpret the instrument in a way most consonant with the overall intention of the settlor. The legislatively presumed intention of the settlor to include adopted grandchildren can best be effectuated by reading "born" and "at birth" as being equivalent to "adopted" and "at adoption."

Reversed and remanded.

Justice Riley, joined by Justice Boyle, dissenting, stated that while the use of the terms "born" or "birth" may not, in and of itself, indicate an intent to include only natural-born children within an open class of beneficiaries, the decision of the Court of Appeals that the use of these terms within the context of the trust agreement here in question does indicate such an intent was not clearly erroneous. The provision of the Revised Probate Code that the term "grandchild" is to be construed to include adoptees, unless a contrary intention appears by the terms of the instrument was not intended to frustrate a testator's or settlor's ascertainable intent, and cannot be interpreted as requiring an express, specific, and unequivocal statement excluding adopted children. The decision of the Court of Appeals so concluding was not clearly erroneous.

## Opinion by Cavanagh, J.

1. Trusts — Adoption — Beneficiaries.

Absent an express intent by the settlor of a trust to exclude adopted grandchildren from the class of grandchildren who are designated as beneficiaries under the trust, adopted grandchildren are presumed to be members of the class and are to be treated in the same manner as any other grandchildren (MCL 700.128; MSA 27.5128).

## Opinion by Brickley, J.

2. Trusts — Adoption — Beneficiaries.

*Ambiguity in a trust instrument regarding whether adopted grandchildren were to be included in the class of beneficiaries denoted as "grandchildren" could best be resolved by applying the legislative presumption that the settlor intended to include*

*the adopted grandchildren so as to read the terms "born" and "at birth" as used in the instrument as being equivalent to "adopted" and "at adoption" (MCL 700.128; MSA 27.5128).*

DISSENTING OPINION BY RILEY, J.

3. TRUSTS — ADOPTION — BENEFICIARIES.

*Use of the terms "born" or "birth" in a trust instrument, while in and of itself may not be indicative of an intent to include only natural-born children within an open class of beneficiaries, may, within the context of a particular agreement, indicate such an intent.*

4. TRUSTS — ADOPTION — BENEFICIARIES.

*The provision of the Revised Probate Code that the term "grandchild" is to be construed to include adoptees, unless a contrary intention appears by the terms of the instrument was not intended to frustrate a testator's or settlor's ascertainable intent, and cannot be interpreted as requiring an express, specific, and unequivocal statement excluding adopted children (MCL 700.128; MSA 27.5128).*

*Bennett, LaParl & Milligan, P.C.* (by *Thompson Bennett*), for Richard A. Milligan, guardian ad litem of the adopted grandchildren.

*Meyer & Kirk* (by *John M. Kirk* and *Patrick K. Rode*) for John M. Kirk, guardian ad litem of the natural-born grandchildren.

CAVANAGH, J. The issue presented by this case is whether the subject trust instrument evidences an intention of the settlor to exclude adopted grandchildren from the class of beneficiaries. The probate court and Court of Appeals concluded that adopted grandchildren were excluded. We disagree, and reverse.

I

Jane Gilmore Maloney, the settlor, created an irrevocable *inter vivos* trust on December 29, 1964, designating it as the "Jane Gilmore Maloney

Grandchildren's Trust, dated December 29, 1964." It provided that until February 1, 1975, the income from the trust would be distributed to public bodies or charitable organizations. On February 1, 1975, the trust property was to be separated into equal funds for each of the settlor's grandchildren living on that date.[1] The trust instrument further provided that if additional grandchildren were born after February 1, 1975, and before the final distribution of the trust property,[2] separate funds for these grandchildren were to be created by deducting equal shares from the then-existing funds.

On February 1, 1975, there were three grandchildren of the settlor living, and separate funds were created as provided by the trust instrument.[3] The present dispute arose because on June 25, 1976, one of the settlor's sons adopted three children.[4]

The trustee was uncertain as to the status of the adopted children and brought an action seeking a declaratory judgment as to their right to participate as beneficiaries of the trust. The action was treated as a petition for instructions, and was transferred to the probate court under MCL 700.22; MSA 27.5022.

The probate court and the Court of Appeals recognized that MCL 700.128; MSA 27.5128 creates a presumption that adopted persons are within terms such as "grandchild," unless it appears from the terms of a trust agreement or will that they are to be excluded:

---

[1] The trust instrument provided that if there were no grandchild living on that date, such a fund should be created on the date of birth of the first grandchild.

[2] The final distribution date was to be when the settlor's youngest surviving son reached fifty years of age or on the death of both sons.

[3] Another grandchild was born on June 1, 1980.

[4] All three of the adopted children had been born before 1975.

In the construction of a trust agreement or will, whether executed on, before, or after June 23, 1966, the term "child", "grandchild", "issue", "heir", "descendant", "beneficiary" or other equivalent term shall be construed to include any adopted person and his descendants whether natural or adopted unless a contrary intention appears by the terms of the instrument or unless the estate devised to the "child", "grandchild", "issue", "heir", "descendant", "beneficiary" or equivalent person vested before June 23, 1966, in an already ascertained person or persons who have an immediate indefeasible right of enjoyment or a present indefeasible fixed right of future enjoyment in the estate.[5]

Both courts, however, found such an intention to exclude adopted grandchildren because of the settlor's use of the words "born" and "date of birth" at several points.[6] The probate court reasoned that inclusion of adopted grandchildren would require

[5] In 1957 the Legislature amended the adoption code to provide that adopted persons have all of the rights of natural children. 1957 PA 255. That statute did not mention wills and trusts. The predecessor of the current statute was enacted effective June 23, 1966. 1966 PA 128, former MCL 702.14a; MSA 27.3178(84a). These statutes reversed the common-law presumption that terms such as "child," "grandchild," or "issue" created a presumption against including adoptees. See, *e.g.*, *In re Graham Estate,* 379 Mich 224; 150 NW2d 816 (1967); *Russell v Musson,* 240 Mich 631; 216 NW 428 (1927).

[6] The portions of the trust instrument include the following provisions:

"3. February 1, 1975, or the date of birth of the first grandchild of mine born after February 1, 1975, if there is no grandchild of mine living on February 1, 1975, shall be the 'initial division date.' The 'final division date' shall be the date whenever after February 1, 1975, my youngest son at the time living has reached age fifty years or both of my sons have died. 'Son' and 'sons' in this instrument refer to my two sons now living, namely, Steven H. Maloney, born August 20, 1942, and Daniel G. Maloney, born November 22, 1944.

*   *   *

"5. On the initial division date the trustee shall divide the trust property into as many equal separate funds as there are grandchildren of mine then living, and a fund shall be named for each such grandchild. If a grandchild or grandchildren of mine shall be born

rewriting the trust document to add reference to the date of entry of an order of adoption. The court directed the trustee not to withdraw assets from the existing trusts for the natural-born grandchildren of the settlor.

The guardian ad litem of the adopted grandchildren appealed, but the Court of Appeals affirmed in an unpublished per curiam opinion. The Court of Appeals also focused on the reference to when grandchildren were "born" and to their "dates of birth." It noted several cases in other jurisdictions holding that classifications of beneficiaries by birth indicates an intent to include only natural born persons.[7] It agreed with the probate court that inclusion of adopted grandchildren would require too drastic a revision of the operative provisions of the trust:

> We cannot agree, as appellants apparently contend, that only a declaration similar to "I intend to exclude adopted grandchildren" would clearly and unambiguously express the settlor's intent. To

between the initial division date and the final division date, then as of the date of birth of each such grandchild the trustee shall deduct equally from the separate funds named for other grandchildren of mine then held hereunder sufficient amounts to provide an additional separate fund to be designated by the name of such newly born grandchild equal in value to the average value (after deduction of such amounts) of the funds from which the deductions are made.

\* \* \*

"7. If no grandchild of mine is born before the final division date, then on that date the trustee shall divide and allocate the trust property in equal shares between my sons, if then living, otherwise per stirpes among the then living descendants of my parents. Each share so allocated shall be retained in trust as a separate and independent trust fund designated by the name of the beneficiary to whom it is allocated and held and disposed of as provided in this instrument."

[7] *Vaughn v Vaughn*, 161 Tex 104; 337 SW2d 793 (1960); *Wachovia Bank & Trust Co v Andrews*, 264 NC 531; 142 SE2d 182 (1965); *First National Bank of Kansas v Waldron*, 406 SW2d 56 (Mo, 1966). Contra *In re Trusteeship Under Agreement With Nash*, 265 Minn 412; 122 NW2d 104 (1963).

read the words "born or adopted" into the document at every place where the term "born," or similar language referring to birth, appears, exceeds the proper bounds of trust construction and amounts to reformation.

We granted leave to appeal. 419 Mich 933 (1984).

II

A fundamental precept which governs the judicial review of wills is that the intent of the testator is to be carried out as nearly as possible. As with other legal documents, the "intent" is to be gleaned from the will itself unless an ambiguity is present. The law is loath to supplement the language of such documents with extrinsic information. This is especially so in the case of testamentary documents because the maker is not available to provide additional facts or insight.

However, presence of an ambiguity requires a court to look outside the four corners of a will in order to carry out the testator's intent. Accordingly, if a will evinces a patent or latent ambiguity, a court may establish intent by considering two outside sources: (1) surrounding circumstances, and (2) rule of construction. *In re Butterfield Estate,* 405 Mich 702, 711; 275 NW2d 262 (1979). [*In re Kremlick Estate,* 417 Mich 237, 240; 331 NW2d 228 (1983), *reh den* 417 Mich 1143 (1983).]

These general rules apply to the interpretation of trust documents. We note that generally, a settlor must relinquish permanent control of trust property to enjoy the favorable tax consequences inherent in an irrevocable *inter vivos* trust. Bogert, Trusts & Trustees (2d ed), § 234, pp 47-48. Accordingly, we should ascertain the settlor's intent at the time the instrument was created.

We cannot say that the wording of the trust is clear and unambiguous. We believe that the Court

of Appeals and the probate court have attached undue importance to the use of the term "born" and "date of birth" in the trust instrument. Those terms appear to us to be convenient ways of explaining the mechanics of the administration of the trust. We are not persuaded that those terms clearly indicate an intent to exclude adopted grandchildren.

The Court of Appeals noted that classification by birth generally indicated an unambiguous intent to include only natural born persons. See n 7. However, numerous cases from this and other jurisdictions indicate that such an interpretation is far from the general or prevailing view. On the contrary, different circumstances, statutes, and instruments have created a variety of results. See generally, 76 Am Jur 2d, Trusts, § 144, pp 386-387; Bogert, *supra,* § 182, pp 267-306. 86 ALR2d 115, § 4 (Later Case Service, pp 343-346).

We find that the wording of the trust is ambiguous. Accordingly, the rule of construction which includes adopted persons should be employed. MCL 700.128; MSA 27.5128. That statute requires an expression of intent to the contrary. However, we find no indication of an affirmative intention to exclude adopted children.[8] At the time the trust

---

[8] In *In re Trusteeship Under Agreement With Nash,* n 7 *supra,* pp 419-420, the court was faced with a similar argument regarding the effect of the settlor's use of the term "hereafter born," in the face of a statutory presumption like that in the Michigan statute. The court found no intent to exclude adoptees:

"We therefore conclude that settlor, Willis K. Nash, used no expression indicative of his attitude toward adopted children of his son, Willis Vanderhoef Nash. He very likely gave the matter *no thought.* The phrase 'hereafter born' was obviously intended to include those who might become children of the life tenant before the termination of the trust. It does not, in our opinion, negative the possibility of adopted children. In dividing the trust for distribution to remaindermen, settlor designated them only as 'children' of his son. *We cannot assume he and his attorneys were wholly oblivious to the laws of adoption when they drafted the trust instrument.* Settlor having at

instrument was executed, there were no adopted grandchildren, and we think it likely that the settlor simply did not consider that possibility. We hold that, in the absence of any expressed intention, the statutory presumption that adopted grandchildren are to be treated like any other grandchild controls.

The judgment of the Court of Appeals and the probate court's order dated September 9, 1981, are reversed. The case is remanded to the probate court for an entry of an order instructing the trustee to make a proper division of the trust assets and to provide equal trusts for the adopted grandchildren in accordance with the terms of the instrument.

Reversed.

WILLIAMS, C.J., and LEVIN, J., concurred with CAVANAGH, J.

RYAN, J. *(concurring)*. I concur in the opinion and judgment of the Court, and I write separately only to emphasize my conviction that Mrs. Maloney did not express in her *inter vivos* trust the intention that the term "grandchild" or its equivalent, as used in the trust, should be construed to exclude her later adopted grandchildren.

Had we been called upon, without explicit guidance from the Legislature, to determine whether Mrs. Maloney, at the time she executed her *inter vivos* trust, intended that any children who may later have been adopted by either of her sons were to be considered to be her grandchildren within the meaning of the trust, our task might have

most shown an indifference to their effect, we are not prepared to say that considerations of public policy require us to find settlor entertained a conscious purpose to exclude adopted children. The reasoning and philosophy expressed by the legislature and the courts in this state require a contrary conclusion." (Emphasis added.)

been more difficult than it actually is. As events occurred, however, the Legislature has greatly simplified our task and, in my judgment, made the construction of this trust easy and evident.

The trust document was executed in 1964. In 1978, with the enactment of MCL 700.128; MSA 27.5128, the Legislature mandated, in effect, that the term "grandchild" or "its equivalent" in Mrs. Maloney's trust "shall be construed" to include her adopted grandchildren "unless a contrary intention appears by the *terms of the instrument . . . .*"[1] (Emphasis added.) Therefore, our duty is simply to examine the language of the instrument to determine whether Mrs. Maloney expressed an intention that her later adopted grandchildren were *not* to be considered to be her "grandchild," "issue," "heir," "descendant," or "beneficiary," because that is the "contrary intention" but for which the Legislature has commanded that all of Mrs. Maloney's grandchildren, biological and adopted, are entitled to take under the trust.

After the most careful scrutiny of the trust instrument, I can find nothing in the language of the trust that suggests even remotely that Mrs. Maloney gave the slightest consideration to including or excluding her later adopted grandchildren, or even that she adverted at all to the possibility that she may someday have grandchildren by adoption. It is sound to conclude, judging from the

[1] "In the construction of a trust agreement or will, whether executed on, before, or after June 23, 1966, the term 'child', 'grandchild', 'issue', 'heir', 'descendant', 'beneficiary' or other equivalent term shall be construed to include any adopted person and his descendants whether natural or adopted unless a contrary intention appears by the terms of the instrument or unless the estate devised to the 'child', 'grandchild', 'issue', 'heir', 'descendant', 'beneficiary' or equivalent person vested before June 23, 1966, in an already ascertained person or persons who have an immediate indefeasible right of enjoyment or a present indefeasible fixed right of future enjoyment in the estate." MCL 700.128; MSA 27.5128.

language of the instrument at least, that Mrs. Maloney never considered the matter. In using the words "born" and "date of birth" in the trust, Mrs. Maloney and her scrivener were employing common, familiar, and convenient terms to describe, as my brother CAVANAGH says, "the mechanics of the administration of the trust." They were establishing a method, by reference to an event the settlor did consider probable, having grandchildren, for the orderly and uniform subdivision of the trust corpus in order that Mrs. Maloney could make provision for equal treatment of all her grandchildren.

To conclude that Mrs. Maloney intended that "grandchild" and "grandchildren," as used in the trust, did not include grandchildren who might later be adopted, and that she expressed that purpose by employing the terms "born" and "date of birth," is to ascribe to Mrs. Maloney an intention to divide her grandchildren into two classes, biological and adopted, and to cut off from her beneficence her later adopted grandchildren solely because they were adopted; and to do so by employing the most imprecise, abstruse, and cryptic language imaginable in a trust instrument that is otherwise a model of clarity, simplicity, and lucidity.

For those reasons, it is my judgment that only by the most strained and unfriendly interpretation of the trust instrument can it be concluded that Mrs. Maloney intended to foreclose her later adopted grandchildren from sharing in the family wealth to the same extent as their cousins.

WILLIAMS, C.J., and LEVIN, J., concurred with RYAN, J.

BRICKLEY, J. (*concurring*). I concur with the

majority result, but write separately to express a somewhat different analysis.

I agree that the settlor did not express in her will "a contrary intent" on the question whether adopted children were to be included as beneficiaries. The reference to "born" and "date of birth" are neutral terms in relation to the question whether adoptees were intended to be included.

However, after application of MCL 700.128; MSA 27.5128 to interpret the word "grandchild" to include an adoptee, a literal reading of the remainder of the instrument still excludes the adopted children because they were not "born between the initial division date [February 1, 1975] and the final division date," even though they were adopted during that period.

A further look at the instrument, however, discloses an ambiguity, if the words "born" and "at birth" are read literally. Paragraph 7 of the trust states "[i]f no grandchild[ren] . . . [are] born before the final division date" then the trust shall be allocated to other beneficiaries. Under this section the adopted grandchildren, having obviously been born before the final disposition date, would have been included in that definition of grandchildren, given the application of § 128 of the statute.

On the other hand, under paragraph 5 of the trust, the adopted children having been born before February 1, 1975, would have been excluded in that paragraph's definition.

The fact that the use of "born" in paragraph 5 excludes these adopted grandchildren, even after the application of § 128, and the use of "born" in paragraph 7 included those same adopted grandchildren not only creates an ambiguity within the instrument itself, but makes it clear that the words "born" and "at birth" were intended to fix the date at which a grandchild becomes a grand-

child rather than to have the date of birth become determinative as to eligibility.

To give a literal reading to "born" and "at birth" under paragraph 5 of the trust, thereby excluding these adopted children because they were born before February 1, 1975, would bring about a result unintended by the use of these words.

When an ambiguity presents itself within the instrument, it is our responsibility to interpret it in a way most consonant with the overall intention of the settlor. *In re Butterfield Estate,* 405 Mich 702, 711; 275 NW2d 262 (1979).

We can best effectuate the legislatively presumed intention of the settlor to include adoptees under the word "grandchild" by reading "born" and "at birth" to be equivalent to "adopted" and "at adoption."

I therefore concur in the result of the majority.

LEVIN, J., concurred with BRICKLEY, J.

RILEY, J. I respectfully dissent.

The issue presented is whether the specific terms of the trust agreement at issue indicate an intent to include only natural born grandchildren and thus to exclude adopted grandchildren from the class of beneficiaries.

Pursuant to the trust agreement's "initial division date" provision, on February 1, 1975, the trust corpus was divided equally into separate trusts for the settlor's then living grandchildren, and a fund was specifically named for each.[1] The funds set aside in the separate trusts for each such

---

[1] The "initial division date" provision is incorporated in paragraph three of the trust agreement:

"February 1, 1975, or the date of birth of the first grandchild of mine born after February 1, 1975, if there is no grandchild of mine living on February 1, 1975, shall be the 'initial division date.' "

grandchild are subject to subsequent reallocation, by the terms of the instrument, to provide a share for each grandchild of the settlor born after the initial division date. The "open" provision of the trust agreement is reflected in paragraph five and reads as follows:

If a grandchild or grandchildren of mine shall be born between the initial division date and the final division date, then as of the date of birth of each such grandchild the trustee shall deduct equally from the separate funds . . . sufficient amounts to provide an additional separate fund to be designated by the name of such newly born grandchild equal in value to the average value (after deduction of such amounts) of the funds from which the deductions are made.

The question is whether the trust assets are to be reapportioned for the benefit of the grandchildren adopted by one of the settlor's sons, on June 25, 1976.

The Revised Probate Code, § 128, provides in part:

In the construction of a trust agreement or will, whether executed on, before, or after June 23, 1966, the term "child", "grandchild", "issue", "heir", "descendant", "beneficiary" or other equivalent term shall be construed to include any adopted person and his descendants whether natural or adopted unless a contrary intention appears by the terms of the instrument . . . . [MCL 700.128; MSA 27.5128.]

It is argued for the appellants (adopted children) that the terms "born" or "birth" in paragraphs three, five, and seven of the trust agreement[2] do not indicate an intent to exclude the adopted

_____
[2] See *ante,* pp 637-638, n 6.

grandchildren, and that these terms are to be treated as "equivalent terms" within the statute. Thus, the statutory rule of construction is applicable, and separate trusts should be established for the appellants pursuant to paragraph five of the trust instrument.

For the appellees (natural children) it is argued that the use of the words "born" and "birth," is, in and of itself, a manifestation of an intent to include only natural-born children, and that the consistent use of these terms by the settlor in the present case indicates an intention that the trust assets be reapportioned only for the benefit of the settlor's natural-born grandchildren.

Cases from other jurisdictions that have involved construing similar terms in wills, testamentary, or *inter vivos* trusts, seem to support the appellees' position. See *Thomas v Trust Co Bank,* 247 Ga 693; 279 SE2d 440 (1981) (adopted children of income beneficiary of *inter vivos* trust did not qualify as remaindermen of trust which provided that remaindermen were "the children born or to be born" of the beneficiary); *Whitfield v Matthews,* 334 So 2d 876 (Ala, 1976) (adopted child not included as beneficiary in *inter vivos* trust where trust instrument provided that trust was for benefit of "children now or later born" to trustor's son); *First Nat'l Bank v Waldron,* 406 SW2d 56 (Mo, 1966) (adoptive children excluded where beneficiaries limited to "and their children, born in lawful wedlock"); *Knox College v Jones Store Co,* 406 SW2d 675 (Mo, 1966) (child adopted by life tenant not included where trust deed provided that it was made for "use and benefit" of life tenant and named natural-born sons of life tenant, which class could be enlarged to include other children as "may be born to" life tenant). See also *Wachovia Bank & Trust Co v Andrews,* 264 NC

531; 142 SE2d 182 (1965); *Vaughn v Vaughn,* 161 Tex 104; 337 SW2d 793 (1960). The only decision brought to our attention reaching a contrary result is *In re Trusteeship Under Agreement With Nash,* 265 Minn 412; 122 NW2d 104 (1963).[3]

Nevertheless, it must be noted that every trust is unique. In *In re Trusteeship Under Agreement With Nash, supra,* 415, the Minnesota Court, in construing the trust agreement in that case, stated:

> No case has been called to our attention in which the precise language of this trust has been construed. We have noted that every testator's circumstances and plan of disposition is unique, that "no will has a brother," and therefore precedents are of no great value.

While the use of the terms "born" or "birth" may not, in and of itself, indicate an intent to include only natural-born children within an open class of beneficiaries, the decision of the Court of Appeals in the present case, that the use of these terms within the context of the subject trust agreement does indicate such an intent, was not clearly erroneous.

In the trust agreement at issue, the word "born" was used four times and the words "date of birth" were used twice.[4] Furthermore, these terms were used in the operative provisions of the trust determining if, when, and how a separate fund is established for a grandchild. To include the adopted grandchildren, paragraph five of the trust

---

[3] The probate judge, in the present case, considered many of the cited cases from other jurisdictions, including *In re Trusteeship Under Agreement With Nash,* which the court found to be distinguishable.

[4] See *ante,* pp 637-638, n 6.

agreement would have to be interpreted as if it read: If a grandchild or grandchildren of mine shall be born *or adopted* between the initial division date and the final division date, then as of the date of birth *or date of entry of a decree or an order of adoption* of each such grandchild, the trustee shall deduct equally from the separate funds named for the other grandchildren of mine then held hereunder sufficient amounts to provide an additional separate fund to be designated by the name of such newly born *or adopted* grandchild.

The section of the Revised Probate Code relied upon by the appellants is a rule of construction, and it provides in part that the term "grandchild" shall be construed to include adoptees, unless a "contrary intention appears by the terms of the instrument." MCL 700.128; MSA 27.5128. The purpose of this statutory rule of construction, however, is not to frustrate a testator's or settlor's intent, which must be effectuated if it can be ascertained.

The statutory language at issue cannot be interpreted as requiring an express, specific, and unequivocal statement excluding adopted children. The decision of the Court of Appeals so concluding was not clearly erroneous. Thus, I would affirm.

BOYLE, J., concurred with RILEY, J.