*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ELIZABETH L. VOGT LIVING TRUST.

JAMES MCCANN, Trustee of the ELIZABETH L. VOGT LIVING TRUST, and LINDA ARMSTRONG,

UNPUBLISHED
August 17, 2023

Appellees,

v

No. 363447
Wayne Probate Court

BARBARA PARKER,

LC No. 2018-842750-TV

Appellant.

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

In this probate action contesting certain distributions of trust assets by an alleged co-trustee, appellant Barbara Parker appeals as of right the trial court's order finding that appellee Linda Armstrong was only a successor trustee of the Elizabeth L. Vogt Living Trust (the Trust), and that she did not assume that role until—and as a result could not be held liable for any action taken prior to—December 2017. On appeal, Parker argues that under a 2011 amendment to the Trust, Armstrong was named a co-trustee, not a successor trustee, of the Trust. We agree. We therefore reverse and remand for further proceedings.

## I. BACKGROUND

The settlor, Elizabeth L. Vogt, created the Trust on June 20, 2000. In Article One, Vogt designated herself as trustee. In Article Three, Vogt designated Lillian Chambers (Vogt's sister) as the first successor trustee, and Barbara Parker (daughter of Vogt's sister, Florence Jones) as the second successor trustee. Vogt amended the Trust on May 20, 2009, but that amendment is not relevant to this appeal. Vogt amended the Trust a second time on September 13, 2011. The amending document states that Vogt "desires to amend the trust to add acting Trustees," and thus edited Article One of the Trust to state in relevant part:

-1-

Section 1. Parties to My Trust

This Trust agreement dated June 20, 2000 was made by ELIZABETH L. VOGT, the Trustor and Trustee, together with LILLIAN CHAMBERS and LINDA ARMSTRONG,[1] as acting Trustees, to serve separately and independent of each other.

The amending document also amended Article Three so that Chambers was no longer named a successor trustee, but Parker remained a successor trustee.

In late 2011 and early 2012—shortly after the second amendment to the Trust was executed—Armstrong was added as an authorized signer to a number of bank accounts associated with the Trust. Beginning in 2015, Armstrong began issuing checks to herself and her relatives from trust assets.[2] She also began depositing reimbursement checks from Vogt's insurer into trust assets, and then immediately withdrawing cash from the asset in the amount deposited.

After Vogt passed away in 2019, Parker began looking into the management of the Trust. After finding out about Armstrong's disbursement of Trust assets, Parker brought this action. Critical to her argument, Parker alleged that the 2011 amendment to the Trust made Armstrong a co-trustee, and that she accepted that appointment by, among other things, becoming an authorized signer of trust assets and signing checks distributing assets on behalf of the Trust. Parker further alleged that Armstrong, as a co-trustee, violated her duties to the Trust, wrongfully embezzled or converted Trust property in violation of MCL 700.7813(4), and converted Trust property in violation of MCL 600.2919a.

In response, Armstrong argued that the 2011 amendment to the Trust made her a successor trustee, who would only take over management of the Trust after the first successor trustee—Chambers—was no longer able to do so. According to Armstrong, Chambers managed the Trust as a successor trustee from 2014 to 2017, and Armstrong did not manage the Trust until December 2017 when Chambers was no longer able to do so.

Along the same lines, Armstrong filed her own motion for summary disposition, arguing that the 2011 amendment appointed her a successor trustee, and she did assume that role until 2017. Armstrong pointed to a provision in the Trust explicitly exempting successor trustees from liability for any action taken by a predecessor trustee, and accordingly argued that she could not be held liable for any act or failure to act taken by her predecessor trustees, i.e., she could not be held liable for any mismanagement of the Trust before December 2017.

In response, Parker reiterated her argument that Armstrong was appointed as a trustee (not a successor trustee) in 2011. According to Parker, because Armstrong was appointed as a trustee

---

[1] Armstrong is Chambers' daughter.

[2] While not pertinent to the issues on appeal, Armstrong testified that she did so at the direction of either Vogt or Chambers, who told Armstrong that she had discussed the disbursements with Vogt.

in 2011, the portion of the Trust exempting successor trustees from personal liability for the acts or failures of prior trustees was inapplicable.

The trial court held a hearing on the parties' competing motions and eventually delivered a ruling from the bench. After recapping the history of the case, the trial court found that Armstrong was a successor trustee, and that she accepted that role in late 2017. Thus, pursuant to the terms of the Trust, Armstrong, as a successor trustee, was not liable for any actions of a prior trustee, meaning that Armstrong could not be held liable for any actions taken before late 2017.

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Michigan Assn of Home Builders v City of Troy*, 504 Mich 204, 211; 934 NW2d 713 (2019). The trial court granted Armstrong's motion for summary disposition, which was filed under MCR 2.116(C)(4), and denied Parker's motion for summary disposition, which was filed under MCR 2.116(C)(10). A motion under MCR 2.116(C)(4) tests the trial court's subject matter jurisdiction, *Braun v Ann Arbor Charter Twp*, 262 Mich App 154, 157; 683 NW2d 755 (2004), while a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

Resolution of both parties' motions turned on the interpretation of the Trust. This Court reviews de novo the interpretation of trusts. *In re Mardigian Estate*, 312 Mich App 553, 558; 879 NW2d 313 (2015).

## III. ANALYSIS

"In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008). The intent of the settlor is best demonstrated by the words in the trust itself. *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985). "The rules of construction applicable to wills also apply to the interpretation of trust documents." *In re Estate of Reisman*, 266 Mich App 522, 527; 702 NW2d 658 (2005). In the context of interpreting wills, this Court has explained that we must read the legal document as a whole and harmonize all of its provisions, if possible. *In re Estate of Bem*, 247 Mich App 427, 434; 637 NW2d 506 (2001). "Given the complexity of some wills, it would be counterproductive for this Court to hyperanalyze and overscrutinize clear, plain language the testator used." *Id*. (quotation marks and citation omitted). If the plain language of the trust creates an ambiguity—either patent or latent—then, and only then, can courts look outside the four corners of the trust to evince the settlor's intent. See *In re Maloney Trust*, 423 Mich at 639.

The relevant language of the Trust as amended by the 2011 second amendment is as follows:

ARTICLE ONE

Trust Creation

Section 1.  Parties to My Trust

This Trust agreement dated June 20, 2000 was made by ELIZABETH L. VOGT, the Trustor and Trustee, together with LILLIAN CHAMBERS and LINDA ARMSTRONG, as acting Trustees, to serve separately and independent of each other.

Section 2.  Name of Trust

The formal name of the Trust is: ELIZABETH L. VOGT LIVING TRUST, dated June 20, 2000.

For transfers of property to the Trust, the designation to be used is: Elizabeth L. Vogt, or Lillian Chambers, or Linda Armstrong, Trustees, or their successors in Trust, under the ELIZABETH L. VOGT LIVING TRUST, dated June 20, 2000, and any amendments thereto.

* * *

Section 4.  Trustor as Trustee

Notwithstanding any other provisions in this trust agreement, when I am serving as Trustee under this trust, I may conduct business and act on behalf of my trust without the consent of any other Trustee.

* * *

Article Three

Appointment of Trustees

Section 1.  Definition of Trustee

All references in this agreement to "Trustee" shall be deemed a reference to the person or entity who is then serving as Trustee and shall include alternate, or successor Trustees or Co-Trustees, unless the context requires otherwise.

* * *

Section 4. Designated Successor Trustee

If for any reason, all of the acting Trustees named in Article One of this Second Amendment to my trust agreement cease to act as Trustees, BARBARA PARKER shall serve as Successor Trustee.

The trial court held that, based on this language, Armstrong was a successor trustee. We disagree. Article One, Section 1, names Vogt as "Trustor and Trustee," and Chambers and Armstrong as "acting Trustees," then explains that each will "serve separately and independent of each other." This plainly appoints Armstrong a co-trustee; while the Trust designates Chambers and Armstrong "acting Trustees," the Trust in the same sentence gives this term the same meaning as "Trustee" when it says that Chambers and Armstrong, as "acting Trustees," will "serve separately and independent" of Vogt and one another.[3] The only reasonable interpretation of this section is that it appointed Armstrong a co-trustee. This interpretation is reinforced by Article One, Section 2, in which the Trust states, "For transfers of property to the Trust, the designation to be used is: Elizabeth L. Vogt, or Lillian Chambers, or Linda Armstrong, Trustees . . . ." Again, this plainly places Vogt, Chambers, and Armstrong in the same position as "Trustees."

The trial court's conclusion that the Trust appointed Chambers and Armstrong successor trustees is untenable in light of Article Three, Section 4, which designates successor trustees. This section specifically names Parker as successor trustee; it does not name either Chambers or Armstrong. From this, the only reasonable inference is that Chambers and Armstrong were *not* successor trustees under the Trust. This is further reinforced by the fact that, in the same sentence that the Trust names Parker the "Successor Trustee," it references "the acting Trustees named in Article One," clearly differentiating "the acting Trustees" from the "Successor Trustee." In short, when reading the plain language of the Trust, the only reasonable conclusion is that the 2011 second amendment appointed Armstrong a co-trustee, not a successor trustee.

On appeal, Armstrong argues that this conclusion fails to read the Trust as a whole. In support of this, Armstrong directs this Court's attention to the definition of "Trustee" in Article Three, Section 1. Armstrong stresses that this section defines "Trustee" as a singular "person or entity," which undercuts any notion that *three* people could all be trustees under the Trust at the same time. This section, however, merely defines "Trustee" as used in the Trust. It explains what the term means when used, for instance, in Article Eight concerning "Trustee Administration" or Article Nine concerning "Trustee Powers." Article Three, Section 1 does not stand for the proposition that there can only be one trustee of the Trust at any given time. To the contrary, this section suggests that "Trustee" can refer to multiple people—the section says that reference to "Trustee" in the Trust "shall include . . . Co-Trustees, unless the context requires otherwise."

Armstrong further argues that her interpretation of the sections governing the appointment of trustees is consistent with how "the listed Trustees appeared to interpret the provision, with the settlors' approval, to mean that one Trustee would primarily manage the Trust and the others would come in when that Trustee was no longer able." But this is irrelevant because Armstrong explicitly concedes that "[t]he trust language is unique and unambiguous . . . as it relates to the appointment

---

[3] Under MCL 700.7703(1), co-trustees must act by majority decision. However, under MCL 700.7105, "[t]he terms of the trust prevail over any provision of this article" with exceptions not applicable here. As MCL 700.7703 and MCL 700.7105 are both part of Article VII of the Michigan Trust Code, the Trust here permissibly appointed co-trustees who could exercise their authority "separately and independent" of one another, meaning without a majority.

-5-

of trustees," and this Court can only consider extrinsic evidence if there is an ambiguity in the agreement. See *In re Maloney Trust*, 423 Mich at 639.[4]

Armstrong also highlights Article One, Section 4, which gives Vogt the authority to "conduct business and act on behalf of my trust without the consent of any other Trustee." It is unclear how this language is relevant, however. That Vogt could conduct her own affairs and independently act on behalf of the Trust has nothing to do with whether the 2011 amendment to the Trust appointed Armstrong a co-trustee.[5]

In a last-ditch effort, Armstrong contends that Article One, Section 1 created "separate trustees" pursuant to MCL 700.7703b by stating that Vogt, Chambers, and Armstrong would act "separately and independently" of one another. This argument is plainly meritless. MCL 700.7703b provides in relevant part:

> (1) A trust instrument may include a separate trustees provision.

> (2) While a separate trustees provision applies, the whole trusteeship of the aggregate trust is divided, under the terms of the separate trustees provision, into

---

[4] Moreover, it is well established that a course of conduct inconsistent with the plain language of an agreement does not create an ambiguity if the agreement is otherwise clear. See *City of Grosse Pointe Park v Michigan Muni Liab & Prop Pool*, 473 Mich 188, 202; 702 NW2d 106 (2005). See also *Zilwaukee Twp v Saginaw Bay City Ry Co*, 213 Mich 61, 71-72; 181 NW 37 (1921); *Michigan Chandelier Co v Morse*, 297 Mich 41, 48; 297 NW 64, 67 (1941).

[5] Armstrong states, "It is difficult to square [Article One, Section 4] with a duty on the part of [Armstrong] to question Ms. Vogt's decisions or her capacity to make them. Ms. Vogt maintained the right to withdraw any property from the Trust or revoke the Trust until she became incapacitated." This argument is misplaced. No one is contesting that Vogt could have made the distributions herself; the issue is that Armstrong allegedly made the distributions. If Armstrong wishes to move for summary disposition on grounds that there is no question of fact that she made the distributions at Vogt's direction, she is free to do so. But, at this point, Armstrong has not filed such a motion, and it is otherwise not at issue in this appeal.

Armstrong also makes an argument related to Article Four, Section 3a—dealing with the definition of disability under the Trust—but the argument is hard to follow. Armstrong seems to assert that, because Vogt was never declared incompetent, she could continue managing her own affairs under the Trust, particularly under Article One, Section 4, which granted Vogt broad discretion to manage the affairs of the Trust. While Armstrong seems to be correct, she does not explain how this relates to whether Armstrong was named a co-trustee in the 2011 second amendment to the Trust. As already explained, the 2011 second amendment to the Trust named Armstrong a co-trustee who served "separately and independent" of Vogt. As such, Armstrong could exercise authority as a co-trustee even while Vogt remained competent and able to exercise broad discretion over the Trust.

discrete sets of separately accepted fiduciary responsibilities, with each discrete set separately allocated to 1 or another of the aggregate trust's separate trustees. . . .

Nothing in Article One, Section 1 suggests that it is a "separate trustees provision," and the Trust does not otherwise give Chambers and Armstrong a discrete set of separate fiduciary responsibilities. Armstrong seems to recognize that her "separate trustees" argument rests on shaky ground because she concedes that "rather than being responsible for separate parts of the trust, [Chambers' and Armstrong's] responsibilities were divided more akin to successor trustees, with each managing a different time period." For the reasons already explained, however, Chambers and Armstrong plainly were not successor trustees, and Armstrong's contention that Chambers and Armstrong were "separate trustees" who function as "successor trustees" is meritless.[6]

In sum, the trial court erred when it held that the 2011 second amendment to the Trust named Armstrong a successor trustee. The only reasonable interpretation of the Trust as amended is that Armstrong was named a trustee beginning in 2011. With this identification of the trial court's error, we remand for the trial court to reconsider the remainder of the parties' arguments. As such, we offer no opinion on the numerous other arguments that the parties raise on appeal.[7]

For these reasons, the trial court's order is reversed, and the case is remanded for further proceedings. We do not retain jurisdiction. Parker, as the prevailing party, may tax costs under MCR 7.219.


/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey

---

[6] Further, as previously explained, the "separately and independent" language in Article One, Section 1 excused the co-trustees from acting only by majority decision, which would otherwise be required by MCL 700.7703(1). See MCL 700.7105(2) (stating that "[t]he terms of the trust prevail over any provision of this article" with exceptions not applicable here).

[7] These arguments include Parker's argument that, pursuant to MCL 700.7701, Armstrong accepted the trusteeship in 2011, and that Armstrong breached her duty of loyalty as a trustee under MCL 700.7802. It also includes Armstrong's argument that Parker does not have standing to challenge any action taken while the Trust was still revocable, and whether Armstrong can otherwise avoid liability despite this Court's reading of the Trust as amended by the 2011 second amendment.