# STATE OF MICHIGAN
# COURT OF APPEALS

MARY ANN HEGADORN,

        Plaintiff-Appellee,

v

DEPARTMENT OF HUMAN SERVICES
DIRECTOR,

        Defendant-Appellant.

UNPUBLISHED
June 1, 2017

No. 329508
Livingston Circuit Court
LC No. 2014-028394-AA

---

ESTATE OF DOROTHY LOLLAR, by
DEBORAH D TRIM, Personal Representative,

        Plaintiff-Appellee,

v

DEPARTMENT OF HUMAN SERVICES
DIRECTOR,

        Defendant-Appellant.

No. 329511
Livingston Circuit Court
LC No. 2014-023895-AA

---

ROSELYN FORD,

        Plaintiff-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Defendant-Appellant.

No. 331242
Washtenaw Circuit Court
LC No. 15-000488-AA

---

Before: M. J. KELLY, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

-1-

The Department of Health and Human Services and its Director ("the Department") appeal by leave granted circuit court orders reversing administrative decisions that affirmed its denial of three individuals' applications for Medicaid benefits. *Hegadorn v Dep't of Human Servs Dir*, unpublished order of the Court of Appeals, entered December 22, 2015 (Docket No. 329508); *Lollar v Dep't of Human Servs Dir*, unpublished order of the Court of Appeals, entered December 22, 2015 (Docket No. 329511); *Ford v Dep't of Health and Human Servs*, unpublished order of the Court of Appeals, entered April 27, 2016 (Docket No. 331242). The legal question presented in each case is relatively straightforward: Are assets placed by an institutionalized individual's spouse into a "Solely for the Benefit of" Trust ("SBO Trust") countable assets for determining whether the institutionalized individual is eligible for Medicaid benefits? We answer that question in the affirmative.

"To be eligible for Medicaid long-term-care benefits in Michigan, an individual must meet a number of criteria, including having $2,000 or less in countable assets." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 698; 808 NW2d 484 (2010). This criteria—requiring that the individual have $2,000 or less in countable assets—is consistent with the purpose of Title XIX of the Social Security Act, commonly known as the Medicaid Act, 42 USC 1396 *et seq*., which "created a cooperative program in which the federal government reimburses state governments for a portion of the costs to provide medical assistance to low-income individuals." *Ketchum Estate v Dep't of Health & Human Servs*, 314 Mich App 485, 488; 887 NW2d 226 (2016) (citation and internal quotation marks omitted). "Participation in Medicaid is essentially need-based[.]" *Mackey*, 289 Mich App at 693. As this Court has previously recognized, however, "[t]he act, with all of its complicated rules and regulations, has also become a legal quagmire that has resulted in the use of several 'loopholes' taken advantage of by wealthier individuals to obtain government-paid long-term care they otherwise could afford." *Id*. at 693-694. That is precisely the concern that the Department expresses in this case.

Mary Ann Hegadorn ("Mrs. Hegadorn"), the plaintiff in Docket No. 329508, began receiving long-term care at the MediLodge Nursing Home in Howell, Michigan, on December 20, 2013. Approximately one month later, on January 23, 2014, her husband, Ralph D. Hegadorn ("Mr. Hegadorn"), established the "RALPH D. HEGADORN IRREVOCABLE TRUST NO. 1 (SOLE BENEFIT TRUST)" ("Hegadorn Trust"), which provided that it was intended to be "a 'Solely for the Benefit Of' trust." On April 24, 2014, approximately four months after beginning long-term care and three months after her husband had established the Hegadorn Trust, Mrs. Hegadorn applied for Medicaid benefits. The Department denied Mrs. Hegadorn's application on August 14, 2014, determining that her countable assets, including the assets that were placed in the Hegadorn Trust, exceeded the applicable eligibility limit.

Dorothy Lollar ("Mrs. Lollar"), who is the plaintiff in Docket No. 3295111, began receiving long-term care at the MediLodge Nursing Home in Howell, Michigan, on May 1, 2014. Less than two months later, on June 19, 2014, Mrs. Lollar's husband, Dallas H. Lollard ("Mr. Lollar"), established the "DALLAS H. LOLLAR IRREVOCABLE TRUST" ("Lollar Trust"), which provided that it was intended to "be a 'Solely for the Benefit of' trust." On July 21, 2014, approximately three months after beginning long-term care and one month after Mr. Lollar established the Lollar Trust, Mrs. Lollar applied for Medicaid benefits. The Department denied Mrs. Lollar's application on August 29, 2014, determining that her countable assets, including the assets that were placed in the Lollar Trust, exceeded the applicable eligibility limit.

Roselyn Ford ("Mrs. Ford"), the plaintiff in Docket No. 331242, began receiving long-term care at the Saline Evangelical Nursing Home in Saline, Michigan, on December 5, 2013. Approximately one month later, on January 10, 2014, Mrs. Ford's husband, Herbert W. Ford ("Mr. Ford"), established the "HERBERT FORD IRREVOCABLE TRUST" ("Ford Trust"), which provided that it was intended to be "a 'solely for the benefit of' trust." On January 30, 2014, almost two months after beginning long-term care and less than one month after Mr. Ford established the Ford Trust, Mrs. Ford applied for Medicaid benefits. The Department denied Mrs. Ford's application on September 29, 2014, determining that her countable assets, including the assets that were placed in the Ford Trust, exceeded the applicable eligibility limit.

In each case, the plaintiffs appealed the Department's determination, and a consolidated hearing before Administrative Law Judge (ALJ) Landis Y. Lain was held in Docket Nos. 329508 and 329511 with respect to Mrs. Hegadorn and Mrs. Lollar. ALJ Lain affirmed the Department's determination with respect to Mrs. Hegadorn and Mrs. Lollar, explaining, in pertinent part, as follows:

> In this case, the Ralph D. Hegadorn Trust [with respect to Mrs. Hegadorn or the "Dallas Lollar" Trust with respect to Mrs. Lollar] meets all of the criteria of a Medicaid trust. The person whose resources were transferred to the trust is someone whose assets or income must be counted to determine MA eligibility, and MA post-eligibility patient pay amount, a divestment penalty or an initial asset amount. The trust was established by the Claimant's spouse. The trust was established/amended on or after August 11, 1993. The trust was not established by will. The trust does not meet the condition of an exception A, special needs trust; or exception B, pooled trust as described in BEM, Item 401.

* * *

> In conducting the initial asset assessment the Department must count both Claimant's and his spouse's total combined assets which were in existence as of December 20, 2013 [with respect to Mrs. Hegadorn or May 1, 2014 with respect to Mrs. Lollar], when Claimant entered long-term care. Claimant's spouse did not place assets into an irrevocable trust until January 23, 2014 [or June 19, 2014]. The spouse's transfer of assets to an irrevocable trust does not undo the initial asset assessment amount. The initial amount of combined assets was $487,755.33 [with respect to Mrs. Hegadorn or $62,500 with respect to Mrs. Lollar]. The protected spousal amount limit was $115,920.00 [with respect to Mrs. Hegadorn or $31,267 with respect to Mrs. Lollar] leaving Claimant with total countable assets as of long-term care entry date of $371,835.33 [with respect to Mrs. Hegadorn or $47,184 with respect to Mrs. Lollar]. Thus, the entire amount must be counted for purposes of Medicaid eligibility determination.

* * *

> The Department is to count as the person's countable asset the value of the trust's countable income if there is any condition under which the income could be paid to or on behalf of the person. Individuals can keep income made off of

-3-

property and the money goes to the individual not the trust. Property cannot be taken out of the trust.

* * *

In an application for LTC for an individual, the assets of both spouses are calculated when determining if there are excess assets. The couple is permitted to retain $2,000 for the application spouse plus the amount calculated as the Spousal Protected Resource amount. Medicaid is the joint state/federal program that provides payment for covered health care services for eligible _**indigent**_ individuals. Medicaid is a means tested program. If Medicaid applicants have sufficient assets, income or insurance to pay for health care they do not qualify for the Medical Assistance program. Federal law allows a community spouse to retain a certain amount of assets, income or insurance to pay for health care they do not qualify for the Medical Assistance program. Federal law allows a community spouse to retain a certain amount of assets. Any assets retained by the applicant or community spouse which exceed those allowed by law are necessarily countable. Transfers from the client's spouse to another SBO irrevocable trust are not divestment. Department policy requires that the distributions to the community spouse be counted for the applicant's eligibility. The trust requires that the assets be distributed back to the beneficiary community spouse during his/her lifetime. Therefore, there is a condition under which the principal could be paid to or on behalf of the person, which makes the assets countable.

In this case, the community spouse's attempt to circumvent both federal law and policy by creating a SBO trust to shelter excess personal assets is an attempt to retain assets which are in addition to/exceed the amounts allowed by policy and law. Such an attempt must fail. The claimant's spouse cannot retain assets in excess of that allowed by law and policy. Claimant and spouse are not indigent. They, at all times relevant to this application, retained assets to pay claimant's LTC, and in fact, retained excess assets for purposes of Medical Assistance benefit eligibility. The department's determination must be upheld. [Citations omitted.]

Similarly, a hearing before ALJ Alice C. Elkin was held in Docket No. 331242 with respect to Mrs. Ford. ALJ Elkin reached the same conclusion as ALJ Lain:

Under its terms, [Mr. Ford]'s SBO Trust requires the annual distribution of funds from the Trust to Spouse with the expectation that the entire principal of the Trust property would be distributed to Spouse over his expected lifetime based on life expectancy tables. The conditions for distributions of all income and principal from the SBO Trust to Spouse are more likely to be satisfied than the conditions leading to disbursement in the State Medicaid Manual example above where funds are disbursed to the beneficiary only in the event the beneficiary needs a heart transplant. Because there is a condition or circumstance for payment of the entire SBO Trust principle to [Mr. Ford], the SBO Trust is a

countable asset under the State Medical Manual, with a value equal to the full value of the countable assets in the SBO Trust.

* * *

The fact that the trustee controls distribution of the Trust assets does not affect the assessment of whether the Trust is a countable asset. As discussed above, the Department's conclusion that the SBO Trust is a countable asset, despite the fact that the trustee controls the distribution of assets, is supported by federal law, Department policy, and the Stated Medicaid Manual and POMS. Furthermore, under § 1396p(d)(2)(C), the determination of a countable asset under § 1396p(d)(3)(B) is not dependent on whether the trustee has or exercises any discretion to make payments. In fact, in in *In re Rosckes*, 783 NW2d 220, 225 (Minn App, 2010), the court held that, where the trust allowed the trustee to pay the beneficiary income and principal at such times and in such portions as he deemed advisable, all of the trust income and principal could have been paid to the beneficiary in some capacity and was, thus, available to the beneficiary under § 1396p(d). Any argument that the assets in the SBO Trust are unavailable is further undermined by BEM 400, p. 9, which states that the determination of whether the asset is available for purposes of determining whether it is countable does **not** apply when the asset is a trust, and BEM 401, p. 10, which states that an asset is not considered unavailable because it is owned by the Medicaid trust rather than a person.

Therefore, Spouse's SBO Trust is, in accordance with Department policy and consistent with federal law, a countable asset valued at the full amount of the value of the assets in the trust corpus at the time of application. Claimant's counsel does not dispute that, when the value of the Claimant's assets includes Spouse's SBO Trust, the difference between the value of those assets and the applicable PSA exceeds the $2000 MA asset limit applicable to Claimant's MA asset eligibility. Therefore, the Department acted in accordance with Department policy and federal law when it denied Claimant's MA application on the basis that the value of her countable assets exceeded the limit for MA eligibility.

In each case, the plaintiffs appealed the ALJs' decisions to the circuit court. In Docket Nos. 329508 and 329511, Livingston Circuit Judge Michael P. Hatty reversed ALJ Lain's decisions to affirm the Department's denial of Mrs. Hegadorn's and Mrs. Lollar's applications. Specifically, Judge Hatty's order provided as follows: "ALJ Lane's opinion determining that the SBO trust assets were countable in determining eligibility is hereby reversed and benefits shall commence at the date of initial application for the reasons placed on the record. Request by [the Department] for stay denied." Judge Hatty explained his decision, in pertinent part, as follows:

The situation is basically that the appellants have put -- or have had assets in a -- in a trust, so-called a SBO trust. And whether or not those assets are deemed countable to the recipient, to the person who is in the institution. And as of the date of the filing of the request for benefits, the assets were not countable to the institutionalized spouse. And while it may have changed afterwards but I -- I

-5-

think I'm gonna rely on what the state of law was at the time that these two appellants applied. One applied June of 2014, the other applied in April of 2014. So it was clearly before that -- that date where -- the August date where the Department of Human Services made a change in policy that effected how these citizens positions will be put in a worst position than had the policy in effect at the time of their filing had placed them in. I -- I look to a case that -- that speaks -- here. It's called Hughes v McCarthy, it's 734 F.3d 473 at 480, it's a Sixth Circuit case of -- that came out in 2013. It looks to me to be controlling. And Hughes sort of stood for the proposition we had a annuity that was in place that had no restriction on how it could be distributed to the community spouse that was not countable to the -- to the institutionalized spouse. I don't know how you would favor a purchased annuity over a valid trust when they both would be -- appear to be provided for under the law.

So I'm going to grant the appeal of the petitioners on both counts and I'm gonna set aside the order of the Administrative Law Judge on both files. I further think that the applicants' position is supported by -- by -- supported by Section 1396p(c)(A)(A) and 1396p(c)(2)(B). So -- 'cause that defines what assets are and I think that it supports appellants' position here. So that's -- in conclusion I don't think that those -- the assets in question are -- I believe them to be non-countable assets. I do believe -- them to be countable assets when working throughout this formula. For those --

\* \* \*

-- reasons I grant the appeal of the petition on both -- both files.

Thus, to use the lower court's own summary, it "reversed 'em and the benefits would be available back to the date of the application . . . ." In Docket No. 331242, Washtenaw Circuit Judge Timothy P. Connors also reversed the ALJ's decision to affirm the Department's denial of Ford's application, relying entirely on Judge Hatty's decision in Docket Nos. 329508 and 329511. Judge Connors's order provided as follows: "The relief requested by the Appellant, Roselyn Ford, is hereby granted based upon the reasons contained in the record and stated on the record." These appeals followed.

"A final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is not supported by competent, material, and substantial evidence on the whole record." *Vanzandt v State Employees' Retirement Sys*, 266 Mich App 579, 583; 701 NW2d 214 (2005). "This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *Id*. at 585. Because we conclude that the circuit courts did not apply the correct legal principles in these appeals, we reverse the circuit court's orders and reinstate the decisions reached by the ALJs.

At the outset, it is undisputed that each trust at issue in this case was, in fact, a Medicaid trust. See Bridges Eligibility Manual ("BEM") 401, p 7. "How much of the principal of a trust is a countable asset depends on" "[t]he terms of the trust, and" "[w]hether any of the principal consists of countable assets or countable income." BEM 401, p 11. BEM 401, p 12, provides, in pertinent part, as follows with respect to irrevocable trusts: "Count as the person's countable asset the value of the countable assets in the trust principal if there is any condition under which the principal could be paid to or on behalf of the person from an irrevocable trust." Thus, the issue before us is whether "there is any condition under which the principal could be paid to or on behalf of the person from an irrevocable trust." We conclude that there is.

In Docket No. 329508, the Hegadorn Trust provided, in pertinent part, as follows:

**2.2** **Distribution of Resources**. During each fiscal year of the Trust, Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime such part of all of the net income and principle ("Resources") of the Trust as Trustee determines is necessary in order to distribute the resources in an actuarially sound basis. In determining an actuarially sound basis for distribution, Trustee shall use the life expectancy table attached hereto as Exhibit 1, to determine the appropriate portion of Resources to be distributed in any fiscal year. During my lifetime, no Resources of the Trust can be used for anyone other than me. Notwithstanding anything contained herein to the contrary, Trustee shall distribute the Resources of the Trust at a rate that is calculated to use up all of the Resources during my lifetime. The Resources of the Trust shall be valued on the 1st day of January of each fiscal year of the Trust, except in the first year of the Resources of the Trust shall be valued as of the date of their contribution to the Trust.

Likewise, in Docket No. 329511, the Lollar Trust provided, in pertinent part, the same:

2.2 *Distribution of resources*. During each fiscal year of the Trust, Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime such part or all of the net income and principal ("Resources") of the Trust as Trustee determines is necessary to distribute the resources in an actuarially sound basis; provided, however, during the fiscal year of the Trust, the distribution shall not be made to me until after such time as Medicaid eligibility has been determined for my spouse, but in no event later than **May 31, 2015.** In determining an actuarially sound basis for distribution, Trustee shall use the life expectancy table attached as exhibit A, to determine the appropriate minimum portion of Resources to be distributed in any fiscal year. During my lifetime, no Resources of the Turst can be used for anyone other than me, except for Trustee fees. Notwithstanding anything contained herein to the contrary, Trustee shall distribute the Resources of the Trust at a rate that is calculated to use up all of the Resources during my lifetime. The Resources of the Trust shall be valued on the first day of **June 1st** of each fiscal year of the Trust, except that in the first fiscal year, the Resources of the Trust shall be valued as of the date of their contribution to the Trust.

Similarly, in Docket No. 331242, the Ford Trust provided the same as well:

> 2.2 *Distribution of resources.* During each fiscal year of the Trust, Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime whatever part of the net income and principal (the Resources) of the Trust that Trustee determines is necessary to distribute the resources on an actuarially sound basis. However, during the fiscal year of the Trust, the distribution shall be made to me after **August 1, 2014,** but before **December 1, 2014.** In determining an actuarially sound basis for distribution, Trustee shall use the life expectancy table attached to this Agreement as Exhibit A, to determine the appropriate minimum portion of the Resources of the Trust may be used for anyone other than me, except for Trustee fees. Notwithstanding anything in this Agreement to the contrary, Trustee shall distribute the Resources of the Trust at a rate that is calculated to use up all of the Resources during my lifetime. The Resources of the Trust shall be valued on the first day of July each fiscal year of the Trust, except that in the first year the Resources of the Trust shall be valued as of the date of their contribution to the Trust.

Generally, this Court's goal in interpreting trust language is to determine and give effect to the settlor's intent. *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985). In doing so, we first look to the language of the trust itself, and, if unambiguous, we interpret it according to its plain and ordinary meaning. *Id*. As is apparent from the plain and ordinary meaning of the language above, all of the assets that were placed into each trust shortly before the Medicaid applications were filed are to be "use[d] up" during the husbands' lifetimes. Similarly, all three trusts include language that instructs the trustees to distribute the assets "on an actuarially sound basis," which means that the "spending must be at a rate that will use up all the resources during the party's lifetime." BEM 405, p 12. Thus, because there was a "condition under which the principal could be paid to or on behalf of the person from an irrevocable trust," the assets in the trusts were properly determined to be countable assets by the Department. BEM 401, p 12.

This conclusion is consistent with applicable authority other than that of the BEM. Most importantly, it is consistent with the statutory requirements set forth in 42 USC 1396p. Specifically, 42 USC 1396p(d)(3)(B) provides, in pertinent part, as follows:

> **(B)** In the case of an irrevocable trust--
>
> **(i)** if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income--
>
> **(I)** to or for the benefit of the individual, shall be considered income of the individual, and

**(II)**  for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section; and

  **(ii)**  any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.

The circuit courts' decisions to the contrary appear to have been premised on what Judge Hatty perceived as a change "of law"—"I think I'm gonna rely on what the state of law was at the time that these two appellants applied"—or "a change in policy"—"the August date where the Department of Human Services made a change in policy that effected how these citizens positions will be put in a worst position than had the policy in effect at the time of their filing had placed them in."  Similarly, plaintiffs argue that the Department impermissibly changed its policy to their detriment.  We disagree.

The basis for the circuit courts' and plaintiffs' position in this regard is an August 20, 2014 memorandum by the Department that "advised that <u>all SBO trust assets are deemed countable</u> pursuant to BEM 401, page 11 regarding Medicaid irrevocable trusts[.]"  According to the circuit courts and the plaintiffs, this decision—the decision to begin treating, or at least consistently treat, SBO trust assets as countable assets—constituted an impermissible change of law or policy, but we are unable to find any legal authority to support such a position.  We are unable to find any law or policy—including the applicable federal statutes, any provisions of the BEM, or any other relevant authority—that was unilaterally and impermissibly changed by the Department.  Indeed, the Department expressly acknowledges that it did, in fact, "clarify" the way it had treated SBO trust assets for Medicaid-eligibility purposes, explaining that the change was required in order to comply with federal mandates, but that is not a change in law or policy.  We thus disagree with the circuit courts' conclusions and the plaintiffs' arguments that this change was legally impermissible.

Relatedly, plaintiffs argue that, even if this change was legally permissible, it is nevertheless inapplicable to them because the change cannot be retroactively applied.  While we appreciate the concerns raised by the plaintiffs and the Elder Law and Disability Rights Section of the State Bar of Michigan ("amicus"), *Hegadorn v Dep't of Human Servs*, unpublished order of the Court of Appeals, entered September 14, 2016 (Docket Nos. 329508, 329511, 331242), in this regard, we ultimately feel compelled to disagree.  First, as identified by the Department, there could be severe consequences statutorily imposed on the Department should it choose not to comply with the federal requirements.  See 42 USC 1396c; see also *Nat'l Fed of Independent Business v Sebelius*, ___ US ___; 132 S Ct 2566; 183 L Ed 2d 450 (2012).  Furthermore, the plaintiffs and amicus do not cite, and we are unable to find, any authority to support the proposition that individuals who are not entitled to Medicaid benefits should nevertheless receive them based on an alleged change in interpretation of applicable state and federal authority.  While they do cite to cases involving the retroactive application of benefits in somewhat similar scenarios, it appears that those cases generally involve situations where a person was denied

benefits that they were entitled to, not situations where a person was denied benefits that they were not entitled to. See, e.g., *Tompkins v Dep't of Social Servs*, 97 Mich App 218; 293 NW2d 771 (1980). Accordingly, we see no reason to retroactively apply the previous interpretation under the facts and circumstances of this case.

Nevertheless, the plaintiffs' primary arguments on appeal focus more on the validity of the change itself, i.e., whether the change in interpretation is correct, than the timing of the change itself. Specifically, they argue that the term "person" in BEM 401 and "individual" in 42 USC 1396p, when reviewed in context, refer only to the Medicaid applicant, i.e., the institutionalized spouse, not the Medicaid applicant's spouse, i.e., the community spouse. Because the SBO trusts at issue in this case were solely for the benefit of the husbands, i.e., the community spouses, the plaintiffs claim, the trusts' assets are not countable as a matter of law. We disagree.

This dispute, which essentially asks us to interpret and apply federal statutes and related administrative manuals, is a question of law that is reviewed de novo. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008). "When interpreting a federal statute, [o]ur task is to give effect to the will of Congress . . . . To do so, [w]e start, of course, with the statutory text, and [u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Id*. at 381-382 (citations and internal quotation marks omitted; alterations in original). This is true even when reviewing interpretations and applications made by administrative agencies. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009). "Principles of statutory interpretation apply to the construction of administrative rules." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003).

Applying those rules to the authority at issue in this case, we are of the view that the trusts' assets, despite being for the sole benefit of the husbands according to the trusts' language, were correctly determined to be countable assets for purposes of the plaintiffs' Medicaid eligibility. There are a plethora of federal statutory provisions that support this view. For example, 42 USC 1396r-5(c)(2) provides as follows:

**(2) Attribution of resources at time of initial eligibility determination**

In determining the resources of an institutionalized spouse at the time of application for benefits under this subchapter, regardless of any State laws relating to community property or the division of marital property--

**(A)** except as provided in subparagraph (B), all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, and

**(B)** resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f)(2)(A) of this section (as of the time of application for benefits).

Similarly, 42 USC 1396p(h)(1) provides as follows:

**(h) Definitions**

In this section, the following definitions apply:

**(1)** The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action—

**(A)** by the individual or such individual's spouse,

**(B)** by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual such individual's spouse, or

**(C)** by any person, including any court or administrative body, acting at the direction or upon the request of the individual or such individual's spouse.

42 USC 1396d(d)(2)(A)(i)-(ii) likewise provides, in pertinent part, as follows:

**(d) Treatment of trust amounts**

\* \* \*

**(2)(A)** For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all of part of the corpus of the trust and if any of the following individuals established such trust other than by will:

**(i)** The individual.

**(ii)** The individual's spouse.

In our view, it is apparent from this clear legislative language that Congress intended that when making an initial eligibility determination, states are to consider assets held by the institutionalized spouses—in this case, the plaintiffs—*and* the community spouses—in this case, the plaintiffs' husbands. 42 USC 1396r-5(c)(2). The Legislature has clearly indicated that an institutionalized individual's assets includes not only those that he or she has, but *also* those that his or her spouse has, 42 USC 1396p(h)(1), and that remains true even when those assets are placed into a trust by the spouse, 42 USC 1396d(d)(2)(A)(i)-(ii). That is precisely the case here. While we appreciate that there are several statutory subsections that, when reviewed in isolation, could arguably support the plaintiffs' claim that SBO Trust assets in these types of situations should not be considered, we are simply not willing to overlook what is, in our view, a clear indication by Congress to the contrary.

Accordingly, because we agree with the Department's and ALJs' conclusion that assets placed by an institutionalized individual's spouse into an SBO Trust are countable assets for

-11-

determining whether an individual is eligible for Medicaid benefits, we reverse the circuit courts' orders providing otherwise and reinstate the decisions reached by the ALJs.

Reversed.

/s/ Michael J. Kelly
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien