NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0114n.06

Case No. 21-1309

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JEFFREY LAPINSKE; JEROLD LAPINSKE;
CASSANDRA LAPINSKE; ALYSSA
MARTORANO; JAMES LAPINSKE

  Plaintiffs - Appellants,

v.

CITY OF GRAND HAVEN, MICHIGAN,

  Defendant - Appellee

DANA NESSEL, ex rel. People of the State of
Michigan,

  Intervenor - Appellee

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 14, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

OPINION

BEFORE: GIBBONS, ROGERS, and NALBANDIAN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. More than a century ago, Martha Duncan created Duncan Park in Grand Haven, Michigan in 1913 through a Trust Deed and a city ordinance. The Trust Deed contained nine Sections outlining obligations for Grand Haven, including the creation of the Duncan Park Commission. In 2009, an eleven-year-old boy died after a sledding accident in the park. Following litigation by the child's estate, each of the Duncan Park Commission trustees resigned in 2013 and Grand Haven passed a new ordinance reforming the Commission's structure (the "2013 Ordinance"). In 2015, a probate court granted Grand Haven's petition to reform the Duncan Park Trust and appoint the City as sole trustee.

Duncan's descendants ("the heirs"), the plaintiffs-appellants in this case, filed a complaint in the Western District of Michigan in 2019 alleging that Grand Haven's adoption of the 2013 Ordinance and reformation of the Duncan Park Commission triggered the Trust Deed's reverter provisions. After the parties filed cross-motions for summary judgment, the district court held that, reading the Trust Deed in its entirety, Duncan's clear intent was for Duncan Park to continue in perpetuity. Accordingly, the court granted Grand Haven's and the Attorney General's motion for summary judgment and denied the heirs' motion for summary judgment. Because it is unambiguous that Duncan's intent was to create a public park in perpetuity, we affirm.

**I**

Martha Duncan (the "Grantor" or "settlor") inherited approximately forty acres of "unspoiled virgin forest" from her late husband, Robert. DE 72-3, McGinnis Decl., Page ID 639. In 1913, she created a public park on the land, located in the Grand Haven, Michigan to perpetuate the Duncan name. Martha Duncan instructed her attorney to draft two documents: (1) a Trust Deed and (2) a proposed ordinance that the City of Grand Haven was required to adopt as a precondition of receiving the property. The Trust Deed contained a legal description of the forty-acre property and conveyed it to three individuals as "trustees for and in behalf of the people of the City of Grand Haven, Michigan." DE 6-1, Trust Deed, Page ID 40, 45–47. It required the land, forever to be known as Duncan Park, to function solely "as a public park, for the [people's] use and enjoyment." *Id.* at 41.

Following the Trust Deed's habendum clause conveying the property to the named trustees are nine Sections. The First Section provides that the premises shall be accepted by Grand Haven's Common Council or its controlling body and provides for "prompt appointment by the Mayor of a successor of any Trustee." DE 6-1, Trust Deed, Page ID 40–41. The Second Section requires

Grand Haven to immediately create "The Duncan Park Commission," which would initially consist solely of the named trustees. *Id.* at 41. The Commission members were to serve without pay, and the Commission would "make its own rules and regulations and . . . have entire control and supervision of [] Duncan Park." *Id.*

The Third Section required the premises be named Duncan Park, providing:

> **Third**: The above-described premises shall be at all times known and described as "<u>DUNCAN PARK</u>" and said described parcel of land shall always be held and occupied by said grantees for and in behalf of the Citizens of the City of Grand Haven as a public park, for the use and enjoyment of the citizens or inhabitants of Grand Haven, and for no other purpose, and this gift and grant hereby made is subject to the express limitations and is on the express conditions that such parcel of land shall always be held and used as a public park as aforesaid, and shall always be called, known and designated as "<u>DUNCAN PARK</u>," and should said parcel of land cease to be so held and used as a public park, and in case the Council or said Trustees shall neglect or refuse to carry out in good faith all of the terms and conditions herein specified, then the premises so dedicated as above, with all improvements, shall revert to the first party herein, her heirs, executors or assigns and become again vested in her, or her heirs, as fully as if such dedication had never been made; and she, her heirs, or executors, may then enter upon and take possession of said premises and thenceforward hold the same as fully as if this dedication had never been made.

*Id.* at 41–42. The Fourth Section barred alcohol from being sold or used on the premises. The Fifth Section required Grand Haven to provide for the "care and improvement" of the park, specifically stating, "[i]t is the desire and intention of the Grantor that the natural beauty of the forest . . . shall be preserved as far as possible." *Id.* at 42. The Sixth Section provided that the Grantor would not be taxed for improvements made north of the park.

The Seventh Section outlined details about the park's governing body, describing how successors of the trust would be selected:

> **Seventh**: The said Trustees, above-named, shall constitute "THE DUNCAN PARK COMMISSION", as aforesaid, and shall select their own successors to office, and they and their successors shall have the exclusive supervision, management and control of said "DUNCAN PARK" and their action in regard to the management, supervision and control of said "DUNCAN PARK" shall be final; and the successor of any member vacating office upon said Board of Trustees, who has been selected by the remaining members of said "DUNCAN PARK COMMISSION", and no other person, shall be appointed upon the DUNCAN PARK COMMISSION, by the Mayor of the City of Grand Haven, and each and every member of said Commission must be a resident of the City of Grand Haven.

*Id.* at 43. In the Eighth Section, the grant of property was expressly conditioned on Grand Haven's adoption of an ordinance creating the Duncan Park Commission, as envisioned by Martha Duncan:

> **Eighth**: This Deed is given on the express condition that the Common Council of the City of Grand Haven shall, on the acceptance thereof, pass an Ordinance satisfactory to the Grantor, creating a "DUNCAN PARK COMMISSION" as herein provided, and providing for its perpetuation in the manner herein specified; also providing for the care and maintenance of said DUNCAN PARK. The repeal of said Ordinance, or any part thereof, at any future time, shall render this Deed null and void and make the same of no effect.

*Id.* Finally, the Ninth Section provided instructions in the event the Duncan Park Commission should end:

> **Ninth**: If at any time in the future the "DUNCAN PARK COMMISSION" shall cease to exist, the Circuit Court for the County of Ottawa in Chancery, or such Court as shall succeed the same, shall, on the application of any Citizen of the City of Grand Haven, take charge of this trust and appoint a suitable "DUNCAN PARK COMMISSION" to fulfill and carry out the terms of the trust for the benefit of the Citizens of the City of Grand Haven; and the Commission so appointed shall thereafter choose its own successors in the same manner as herein provided."

*Id.*

On October 13, 1913, Martha Duncan sent the Grand Haven City Clerk an unexecuted copy of the Trust Deed and a proposed ordinance that she approved. The Grand Haven Common

Council enacted the ordinance exactly as submitted on October 20, 1913. The ordinance created a Duncan Park Commission, whose governing structure met the Trust Deed's requirements: it named the three designated trustees, declared the Commission autonomous, and implemented the desired appointment process for successor trustees. On October 22, 1913, after Grand Haven adopted the ordinance, Duncan executed the Trust Deed. The 1913 Ordinance was readopted in 1994 when Grand Haven obtained liability insurance for the park, the Commission, and the trustees.

In December 2009, eleven-year-old Chance Nash died following a sledding accident in the park. His death prompted extensive litigation in Michigan's state courts regarding liability for the accident. In relevant part, Diane Nash, Chance's mother, filed two lawsuits: one against the Duncan Park Commission, and another against the three individual trustees of the Duncan Park Commission. *See Est. of Nash by Nash v. City of Grand Haven*, 909 N.W.2d 862, 865 (Mich. Ct. App. 2017); DE 72-10, Mich. Ct. App. Op. and Order, Page ID 684–91. After the Michigan court determined that neither the Commission nor the trustees could be sued, Nash's mother appealed both decisions. The Michigan Court of Appeals consolidated the cases.

As the appeals were pending, on March 4, 2013, Grand Haven adopted Ordinance 13-01, repealing two sections of the 1913 Ordinance and amending the remaining sections. The 2013 Ordinance repealed Section 25-66 of the 1913 Ordinance, governing the filling of vacancies in the Duncan Park Commission, and Section 25-67, governing selection by lot. It amended the remaining sections of the 1913 Ordinance, including "Duncan Park Commission," "Organization," "Duties," "Funding," and "Commissioners." DE 72-11, 2013 Ordinance, Page ID 745–46. One of the 2013 amendments included a provision that five, rather than three, individuals would comprise the Commission and would serve in staggered five-year terms. Another amendment

provided that individuals serving on the Commission "may be removed by the City Council for misfeasance, malfeasance or nonfeasance in office." *Id.* at 746. Additionally, the 2013 Ordinance outlined new methods for appointing Commission members and filling vacancies.

In Grand Haven's 2015 Petition for Reformation of the Duncan Park Trust, filed in and granted by the Ottawa County Probate Court, the City explained that the 2013 Ordinance was enacted in response to the Ottawa County Circuit Court's rulings regarding potential liability for the Commission and its trustees. Additionally, Grand Haven asserted that the Trust Deed did not comport with the "transparency and accountability mechanisms that typically apply to governing bodies that oversee public property" because a three-member, self-appointed governing body can cause gridlock, undervaluing a dissenting view, and an inability to fill vacancies. DE 72-13, Pet. for Reformation of the Duncan Park Trust, Page ID 753. Grand Haven's City Attorney, Scott Smith, further indicated the 2013 Ordinance was "[i]n response to the Ottawa County Circuit Court's ruling and the inability of the then-current Duncan Park Commission to govern Duncan Park in the midst of pending litigation." DE 72-9, Smith Decl., Page ID 667.

In March 2013, around the time Grand Haven passed the 2013 Ordinance, the three trustees who comprised the Duncan Park Commission—all of whom were named defendants in the 2012 Nash lawsuit—resigned. Grand Haven's City Attorney stated that the resignations were because of the Nash litigation and "fear of potential personal exposure," as well as an inability "to govern as a result of disagreements between remaining trustees." DE 72-9, Smith Decl., Page ID 667. Former trustee Ed Lystra explained, in response to a Nash interrogatory as to why he resigned, that "[a]n ordinance was adopted by the City of Grand Haven on 3-24-13 creating a new Commission comprised of five newly appointed Commissioners." DE 72-10, Lystra Resp., Page ID 731.

Although the 2013 Ordinance provided an appointment process for the Duncan Park Commission, no trustees were appointed to replace the three that resigned in March 2013.

Meanwhile, the Nash litigation continued. In March 2014, the Michigan Court of Appeals issued an opinion addressing the two pending appeals. *See Nash v. Duncan Park Comm'n*, 848 N.W.2d 435 (Mich. Ct. App. 2014). The panel ruled that the Trust Deed created a valid charitable trust, the trustees held fee simple title to the park, and the Duncan Park Commission and trustees were not entitled to governmental immunity. *Id.* at 446–50, 453–54, 454–55. The Michigan Supreme Court did not disturb these aspects of the opinion in *Nash v. Duncan Park Commission*, 862 N.W.2d 417 (Mich. 2015). Because the trustees comprising the Duncan Park Commission resigned in 2013 and were never replaced, in December 2015, Nash's mother filed a Petition for Appointment of Successor Trustee in Ottawa County Probate Court to fill the still-vacant Commission. Simultaneously, Grand Haven filed its 2015 Petition for Reformation of the Duncan Park Trust.

The probate court addressed both petitions in one opinion granting Grand Haven's petition to reform the trust and denying Nash's petition to appoint new trustees. The court noted the Nash Estate's failure "to find anyone . . . willing to serve as successor trustee." DE 72-14, Probate Opinion, Page ID 777. Because the trustees, under the original trust structure, would face exposure to personal liability for park injuries, the court concluded "it is wishful thinking to believe that the Estate will ever be able to find anyone willing to serve as successor trustee." *Id*. The court added that the then-current trust was "stuck in a legal purgatory" in which the park would forever be ungoverned unless it granted reformation. *Id.* at 777–78. After outlining several reasons why it was "highly impracticable" for the Duncan Park Trust to continue in its then-current form, the probate court granted Grand Haven's petition to reform the Trust and name the City as trustee. *Id.*

The Michigan Court of Appeals affirmed the probate court's opinion and order, and the Michigan Supreme Court denied Nash's application for leave to appeal. *Nash v. Duncan Park Comm'n.*, 2017 WL 3441404 (Mich. Ct. App. August 10, 2017), *leave to app. den'd*, 904 N.W.2d 864 (Mich. 2018). Grand Haven again amended the Duncan Park Commission ordinance in April 2016 to reflect that the City was appointed sole trustee of the charitable Duncan Park Trust by the Ottawa County Probate Court's February 29, 2016 opinion.

The winding history of Duncan Park and the Nash litigation bring us to the current case. Plaintiffs-appellants Jeffrey Lapinske, Jerold Lapinske, Cassandra Lapinske, Alyssa Martorano, and James Lapinske are descendants of Martha Duncan.[1] The heirs filed a complaint in the Western District of Michigan in March 2019, alleging that Grand Haven's adoption of the 2013 and 2016 Ordinances pertaining to Duncan Park triggered the Trust Deed's reversionary provisions. The only named defendant in the complaint is the City of Grand Haven, but Michigan Attorney General Dana Nessel successfully moved to intervene as a third-party defendant. The parties filed cross-motions for summary judgment.

The district court granted summary judgment to Grand Haven and the Attorney General. Although the court recognized that the administrative structure of the trust had changed, it held that the Trust Deed provided a mechanism for such changes to ensure the settlor's "charitable intention could be honored in perpetuity." DE 93, Op. and Order, Page ID 1285–86. By petitioning the Michigan courts for appropriate relief, which the district court noted "is exactly what happened," the trust could be modified without triggering its reverter provisions. *Id.* at 1286. Therefore, the court held no reverter provisions were triggered and granted summary judgment to

---

[1] The parties are very familiar with the case's history: the attorney representing the Duncan heirs is the same who represented the Nash Estate in the previous litigation.

Grand Haven and the Attorney General. The district court noted in a footnote that, alternatively, any reverter would be unenforceable under the doctrine of cy pres, citing Mich. Comp. Laws Ann. § 700.7413.

## II

We review de novo the district court's grant of summary judgment. *Equitable Life Assur. Soc'y of the United States v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). We affirm the district court if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," viewing the facts in the light most favorable to the nonmoving party. Fed. R. Civ. Pro. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine issue of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'" *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.

Federal courts sitting in diversity jurisdiction "are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Here, Michigan substantive law applies. Under Michigan law, a deed is a contract, and its interpretation is reviewed de novo on appeal. *In re Rudell Est.*, 780 N.W.2d 884, 891 (Mich. Ct. App. 2009) (citing *Negaunee Iron Co. v. Iron Cliffs Co.*, 96 N.W. 468, 473 (Mich. 1903)).

## III

The clear intent of the Trust Deed was to create a public park in perpetuity. Considering this intent and the Trust Deed's provision of a mechanism to modify the trust terms, neither the

2013 Ordinance nor the reformation of the Duncan Park Commission triggered the Trust Deed's reverter provisions. Alternatively, Michigan's cy pres statute would render the reverter provisions unenforceable. We affirm the district court's decision to grant Grand Haven's and the Michigan Attorney General's motions for summary judgment.

**A**

The outcome of this case hinges on interpretation of the Trust Deed. Under Michigan law, a deed is interpreted as a contract. *See In re Rudell Est.*, 780 N.W.2d at 891; *Bloomfield Ests. Improvement Ass'n, Inc. v. City of Birmingham*, 737 N.W.2d 670, 674–75 (Mich. 2007); *Penrose v. McCullough*, 862 N.W.2d 674, 677 (Mich. Ct. App. 2014) ("[B]ecause deeds are contracts, the interpretation of their language is an issue of law."). "The language of a contract must be construed according to its plain and ordinary meaning, rather than technical or constrained constructions." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (citing *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846, 848 (Mich. Ct. App. 1996)).

A court's sole objective in resolving a dispute concerning the meaning of a trust is "to ascertain and give effect to the intent of the settlor." *In re Kostin*, 748 N.W.2d 583, 589 (Mich. Ct. App. 2008) (citation omitted). "The intent of the settlor is to be carried out as nearly as possible." *Id.* (citing *In re Maloney Trust*, 377 N.W.2d 791, 793 (Mich. 1985)). A settlor's intent is to be "gauged from the trust document itself, unless there is ambiguity." *Id.* If the trust document is ambiguous, the court may "consider the circumstances surrounding the creation of the document and the general rules of construction" to carry out the settlor's intent. *Id.* (citing *In re Butterfield Est.*, 275 N.W.2d 262, 266 (Mich. 1979)). The court must attempt to construe the instrument so that each word has meaning. *Detroit Bank & Tr. Co. v. Grout*, 289 N.W.2d 898, 905 (Mich. Ct. App. 1980).

We are tasked with determining Martha Duncan's intent in executing the Trust Deed. This intent is straightforward: she wished to create a public park for the citizens of Grand Haven that would "at all times known and described as '<u>DUNCAN PARK</u>.'" DE 6-1, Trust Deed, Page ID 41–42. All parties agree the property has been continuously maintained and operated as a public park known as Duncan Park. At issue then is not Martha Duncan's intent in creating the park, but her intent as to the circumstances that would trigger a reverter provision. The Trust Deed's Third Section contains a provision stating, "in case the Council or said Trustees shall neglect or refuse to carry out in good faith all of the terms and conditions herein specified, then the premises . . . shall revert to the first party herein, her heirs, executors or assigns. . . ." DE 6-1, Trust Deed, Page ID 41–42. The heirs argue the City breached the conditions required of it by the Trust Deed and triggered this reverter provision by adopting new ordinances to replace the 1913 Ordinance and reforming the Commission's structure. Neither argument can prevail because the Trust Deed's Ninth Section expressly provides a mechanism for future changes so that the park could exist in perpetuity.

The heirs argue the City breached its obligations under the Trust Deed by enacting the 2013 Ordinance, asserting that language in the Third Section proves Martha Duncan's intent for Duncan Park to presently be returned to her heirs. Specifically, the heirs point to the Trust Deed's Third Section, which provides:

> . . . and should said parcel of land cease to be so held and used as a public park, and *in case the Council or said Trustees shall neglect or refuse to carry out in good faith all of the terms and conditions herein specified*, then the premises so dedicated as above, with all improvements, *shall revert to the first party herein, her heirs, executors or assigns and become again vested in her, or her heirs, as fully as if such dedication had never been made*; and she, her heirs, or executors, may then enter upon and take possession of said premises and thenceforward hold the same as fully as if this dedication had never been made.

CA6 R. 29, Appellant Br., 33 (citing DE 6-1, Trust Deed, Page ID 41–42). The heirs also point to the Trust Deed's Eighth Section, which details an "express condition" requiring Grand Haven to pass an ordinance creating the Duncan Park Commission, and explaining: "The repeal of said Ordinance, or any part thereof, at any future time, shall render this Deed null and void and make the same of no effect." *Id.* at 43.

The heirs assert that the City originally complied with this requirement by enacting the 1913 Ordinance, but later failed to carry out its obligations by enacting the 2013 Ordinance, which changed the administrative structure of the Duncan Park Commission. The heirs contend that "[t]he establishment of the new Commission was in contravention of Mrs. Duncan's intent in donating the land for Duncan Park" because "the City was charged with 'faithful fulfillment of the conditions' of the Trust Deed," which includes keeping "the very structure of the Duncan Park Commission that Mrs. Duncan had insisted on in the Trust Deed and the 1913 ordinance." CA6 R. 29, Appellant Br., at 35–37. Because Grand Haven enacted ordinances to update the Commission's structure, the heirs argue, the City "breached the obligations that Mrs. Duncan had imposed as a precondition to her largess." *Id.* at 38.

At first blush, the language to which the heirs point complicates Martha Duncan's intent. Read apart from the rest of the Trust Deed, the Eighth Section indicates Grand Haven's adoption of the 2013 Ordinance—which explicitly repealed part of the 1913 Ordinance—renders the deed null and void. *Compare* DE 6-1, Trust Deed, Page ID 43, *with* DE 72-11, 2013 Ordinance, Page ID 745–46. But Michigan law regards deeds as contracts, and it is a well-established principle of contract interpretation that portions of a contract are not read in isolation. *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) ("[C]ontracts must be construed so as to give effect to every word or phrase as far as practicable." (internal quotation omitted)); *Dobbelaere*

*v. Auto–Owners Ins. Co.*, 740 N.W.2d 503, 505 (Mich. Ct. App. 2007) (noting the objective of contract interpretation "is to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement"). Here, the Trust Deed's Third and Eighth Sections must be read in conjunction with the Ninth Section, in which Martha Duncan expressly recognized that for a park to exist in perpetuity, flexibility is essential. The Ninth Section provides:

> If at any time in the future the "DUNCAN PARK COMMISSION" shall cease to exist, the Circuit Court for the County of Ottawa in Chancery, or such Court as shall succeed the same, shall, on the application of any Citizen of the City of Grand Haven, take charge of this trust and appoint a suitable "DUNCAN PARK COMMISSION" to fulfill and carry out the terms of the trust for the benefit of the Citizens of the City of Grand Haven; and the Commission so appointed shall thereafter choose its own successors in the same manner as herein provided."

DE 6-1, Trust Deed, Page ID 43.

The language of the Ninth Section is important to fully understand Martha Duncan's intent. Although she required the City of Grand Haven to enact an ordinance establishing the Duncan Park Commission and provided parameters for its administrative structure, she openly recognized that, for various unnamed reasons, the Duncan Park Commission she envisioned could cease to exist. In that event, she indicated that bringing the matter to the Michigan court system was the appropriate solution. And that is precisely what happened: following the tragic 2009 sledding accident, litigation ensued in Michigan's state and probate courts. The Michigan Court of Appeals ruled that Martha Duncan's Trust Deed created a legitimate trust, *Nash v. Duncan Park Comm'n*, 848 N.W.2d 435, 443 (Mich. Ct. App. 2014), and the Michigan Supreme Court left this part of the decision undisturbed. *See Nash v. Duncan Park Comm'n*, 862 N.W.2d 417, 418 (Mich. 2015) (vacating in part and otherwise denying leave to appeal). Duncan's foresight that the Duncan Park

Commission could cease to exist proved fateful: as the Commission and its trustees faced legal liability for the accident, each of the trustees resigned.[2] The 2013 Ordinance provided an appointment process for members of the Duncan Park Commission, but no trustees were appointed to replace the three that resigned in March 2013.

With no trustees, the Duncan Park Commission essentially ceased to exist, just as Martha Duncan envisioned when penning the Ninth Section. In 2015, a Michigan probate court addressed this problem by granting Grand Haven's petition to reform the trust and denying Nash's petition to appoint new trustees. The Ottawa County Probate Court pointed out that the Nash Estate had been unable to locate anyone who would be willing to serve as a future trustee and held it was "highly impracticable" for the Duncan Park Trust to continue in its then-current form. DE 72-14, Probate Opinion, Page ID 777. The probate court granted Grand Haven's petition to reform the Trust and name the City as trustee.[3] The Trust Deed provided a mechanism in which the Duncan Park Commission ceased to exist, and Grand Haven used Michigan's courts to "take charge of this trust and appoint a suitable 'DUNCAN PARK COMMISSION' to fulfill and carry out the terms

---

[2] The facts must be viewed in the light most favorable to the heirs, who argue the trustees resigned because Grand Haven passed the 2013 Ordinance. Appellees, however, frame the resignations as caused by the Nash litigation, the trustee's fear of personal liability, and the Commission's inability to govern efficiently due to internal disagreements. But the two purported reasons for resignation are not inconsistent. Appellants do not dispute that the 2013 Ordinance was enacted in direct response to the Nash litigation and the Commission's breakdown. Whether the resignations were a direct response to the litigation, or a second-order effect of the 2013 Ordinance is immaterial to the issues here on appeal. The 2013 Ordinance did not force the end of the Commission, but rather was in response to the same series of events as the resignations themselves.

[3] The Michigan Court of Appeals affirmed the probate court's opinion and order and the Michigan Supreme Court denied Nash's application for leave to appeal. *Nash v. Duncan Park Comm'n.*, 2017 WL 3441404 (Mich. Ct. App. Aug. 10, 2017), *leave to app. den'd*, 904 N.W.2d 864 (Mich. 2018).

of the trust for the benefit of the Citizens of the City of Grand Haven"—exactly as the Ninth Section required. DE 6-1, Trust Deed, Page ID 43.

The district court concluded that the City's actions in enacting the 2013 Ordinance did not trigger the reverter provision in the Trust Deed's Third Section. It held that although the Duncan Park Commission's administrative structure changed, with the City serving as trustee instead of individual people, the new structure was permitted by the Trust Deed's Ninth Section. The court emphasized Duncan's "overriding goal" to maintain a public park bearing her name in perpetuity and held that this charitable intention was enabled by the state courts' decisions to reform the trust and keep Duncan Park intact. DE 93, Op. and Order, Page ID 1286. The court stated the Ninth Section "provided for the road map" to allow "the appropriate public authority" to maintain the park, holding that "[a] ruling for Plaintiffs would upset that vision and risk continued operation of the park for the first time in 107 years. In the Courts' [sic] view, nothing in the Trust Deed could be clearer than that Ms. Duncan did not and would not want that to happen." *Id.*

Grand Haven's adoption of the 2013 Ordinance did not trigger a reverter clause in the Trust Deed. The chief objective in interpreting trust language is to effectuate the settlor's intent. *See In re Butterfield Est.*, 275 N.W.2d at 266. Here, the nine provisions of the Trust Deed must be read together. *Auto Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 540 (Mich. 2015) ("[C]ontractual terms must be construed in context . . . and read in light of the contract as a whole." (internal citations omitted)). The heirs assert the district court erred by failing to address "the language of either of the reversionary provisions contained in Mrs. Duncan's Trust Deed." CA6 R. 29, Appellant Br., at 27–28. The district court's opinion is brief and lacks caselaw, but it does address the language of the reverter provisions in its Facts section. In its analysis, the court directly engaged with the

language by holding that Grand Haven's management and administrative changes of the Trust and that the state court's reformation of the Trust did not trigger the reverter provision.

The heirs also argue the trustees "neglect[ed] or refuse[d] to carry out in good faith all of the terms and conditions," as required by the Trust Deed's Third Section, and therefore triggered the reverter provision. While the Third Section does outline circumstances under which the property should revert to Duncan's heirs, those conditions are not met here. The Third Section provides the possibility of reverter only if (1) the land ceases to be a public park, and (2) "the Council or said Trustees shall neglect or refuse to carry out in good faith all of the terms and conditions herein specified." DE 6-1, Trust Deed, Page ID 41–42. The land has continuously been maintained as a public park named Duncan Park, even during the period in which the Commission had no trustees. The heirs urge the panel to read the "and" in this Section as an "or"— such that violating either condition would trigger the reverter clause—pointing to two early twentieth century cases in which the Michigan Supreme Court held the two words can at times be interchangeable. CA6 R. 36, Appellant Reply Br., at 4 (citing *Gates v. Kenney*, 193 N.W. 808, 809 (Mich. 1923); *Heckathorn v. Heckathorn*, 280 N.W. 79, 81 (Mich. 1938)). *Gates* and *Heckathorn* examine ambiguous language using a treatise, noting that while "or" and "and" are not "interchangeable, . . . their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context." *Gates*, 193 N.W. at 808–09 (citing Lewis' Sutherland Statutory Construction (2d Ed.), § 397); *Heckathorn*, 280 N.W. at 81 (same). Here, the reading the heirs urge us to adapt does not comport with Duncan's clear intent to establish a public park in perpetuity. Because the parcel of land designated in the Trust Deed has continued to be held and used as Duncan Park, the reverter in the Third Section was not triggered by the resignation of the trustees.

The heirs next argue the City's actions to reform the Commission's administrative structure are contrary to the Eighth Section of the Trust Deed, rendering the deed "null and void." CA6 R. 29, Appellant Br., at 38. However, the interpretation the heirs urge is contrary to Duncan's clear intent to create Duncan Park in perpetuity, as evidenced when reading the Eighth and Ninth Sections together. The Eighth Section requires the City to pass an ordinance creating the Duncan Park Commission as specified in order to perpetuate Duncan Park and provide for its care and maintenance; the Ninth Section provides the ability to modify the Commission through the Michigan court system to fulfill the terms of the trust for the benefit of Grand Haven's citizens.

In the 2013 Ordinance, Grand Haven preserved certain provisions of the 1913 Ordinance and repealed and replaced others to better provide for Duncan Park's perpetuation. Later, in the City's 2015 Petition for Reformation of the Duncan Park Trust, the City explained that the ordinance was prompted by the Nash litigation and the need to modernize the administrative structure of the Commission. The Commission had been stymied by ongoing litigation and by the passage of nearly a century since it was first envisioned, argued the City. Grand Haven successfully argued to the probate court that the Trust Deed's proposed structure of the Commission did not comport with the "transparency and accountability mechanisms that typically apply to governing bodies that oversee public property." DE 72-13, Pet. for Reformation of the Duncan Park Trust, Page ID 753. In light of this context and reading the Trust Deed in its entirety with the Ninth Section's mechanism to replace the Duncan Park Commission, Grand Haven's enactment of the 2013 Ordinance and its 2015 Petition for Reformation of the Duncan Park Trust did not render the Trust Deed null and void.

As our sole objective in resolving a dispute concerning the meaning of a trust is "to ascertain and give effect to the intent of the settlor," and "[t]he intent of the settlor is to be carried

out as nearly as possible," *In re Kostin*, 748 N.W.2d at 589, we conclude that Martha Duncan's clear intent was to provide a public park bearing her name for the people of Grand Haven to enjoy.

**B**

In its opinion, the district court included a final footnote stating that any reverter provision in the Trust Deed would be unenforceable under the Michigan Estates and Protected Individuals Code, M.C.L. 700.7413. The court noted:

> Even if the reverter provision had been triggered——and the Court does not believe it has been—the reverter would not be enforceable because more than 50 years have passed since the original creation of the right, and Ms. Duncan is no longer living. MCLA 700.7413. The reverter would fail, and the Michigan Courts would have the right and responsibility to apply *Cy Pres*.

DE 93, Op. and Order, Page ID 1286.

The heirs argue the district court erred in applying M.C.L. 700.7413(3) in this situation because that subsection is "based on §413 of the Uniform Trust Code (UTC)" and "has no application in this context." CA6 R. 29, Appellant Br., at 42–44. The heirs reassert the argument that the Trust Deed is null and void due to the 2013 Ordinance and the reformation of the Duncan Park Commission; therefore, they argue, "there is no trust to be reformed under [the cy pres] doctrine." *Id.* at 44. The heirs argue the language of M.C.L. 700.7413(1) should control and cy pres is not applicable because Duncan's charitable purpose never became unlawful, impracticable, or unachievable. Grand Haven and the Michigan Attorney General argue the district court correctly noted that the cy pres statute would apply.

Cy pres "is a saving device applied to charitable trusts so that when the specific purpose of the settlor cannot be carried out, his charitable intention can be fulfilled as nearly as possible." *In re Rood's Est.*, 200 N.W.2d 728, 734 (Mich. Ct. App. 1972). In M.C.L. 700.7413, Michigan codified the common law cy pres doctrine. The statute outlines circumstances under which a court

may modify or terminate a trust when a settlor had a general charitable intent. If (1) the settlor's charitable purpose "becomes unlawful, impracticable, or impossible to achieve"; (2) there is no alternative taker identified; and (3) the settlor had a general, rather than specific, charitable intent, the trust will not fail and will not revert. M.C.L. 700.7413(1). Rather, "[t]he court may apply cy pres to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's general charitable intent." M.C.L. 700.7413(1)(c). The statute specifies:

> (3) A provision in the terms of a charitable trust that would result in distribution of the trust property to a noncharitable beneficiary prevails over the power of the court to apply cy pres to modify or terminate the trust only if, when the provision takes effect, either of the following applies:
>
>> (a) The trust property is to revert to the settlor and the settlor is still living.
>>
>> (b) Less than 50 years have elapsed since the date of the trust's creation.

M.C.L. 700.7413(3).

The district court's application of M.C.L. 700.7413(3) was appropriate. The reverter provision in the Trust Deed's Third Section provides that if certain conditions in the deed are not met, the property "shall revert to the first party herein, her heirs, executors or assigns and become again vested in her, or her heirs, as fully as if such dedication had never been made . . ." DE 6-1, Trust Deed, Page ID 41. This constitutes a provision in the terms of a charitable trust that would result in distribution of the trust property to a noncharitable beneficiary. Under M.C.L. 700.7413(3), this result prevails over the court's ability to apply cy pres *only if* (1) the settlor is still alive, or (2) less than 50 years have passed since the trust's creation. The parties do not dispute that neither of these conditions is met. Martha Duncan died on August 5, 1918, and the Trust Deed

was executed in 1913. Accordingly, the district court correctly noted the doctrine of cy pres could be applied to preserve Duncan's intent that the property be used as a public park.

The heirs also point to *La Fond v. City of Detroit*, 98 N.W.2d 530, 533 (Mich. 1959), in which the Supreme Court of Michigan held "[t]he cy pres doctrine is used to aid the court in carrying out the true intention of the donor and cannot be used for the purpose of eliminating the unambiguous words found in deceased's will." But this works against the heirs' position. Martha Duncan's express intent in the Trust Deed, read as a whole, is to provide a park for the enjoyment of the citizens of Grand Haven.

As we have held above, the reverter provisions were not triggered, and the district court properly granted summary judgment to Grand Haven and the Michigan Attorney General on those grounds. However, even if the reverter provisions were triggered, the district court correctly ascertained that under M.C.L. 700.7413(3), a court could apply the doctrine of cy pres.

## IV

For more than one hundred years, the citizens of Grand Haven have used and enjoyed Duncan Park. Martha Duncan clearly intended to create this public park in perpetuity when she executed her Trust Deed, emphasized by the deed's mechanism to modify the trust terms. We affirm the district court's decision to grant Grand Haven's and the Michigan Attorney General's motions for summary judgment.