*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GERALDINE M. HARDY REVOCABLE TRUST.

LAURA M. KYSTAD, Trustee, and MEDICAL UNIVERSITY OF SOUTH CAROLINA,

Appellees,

v

PAMELA MELTON and JEROME W. MCDANIEL,

Appellants.

UNPUBLISHED
January 29, 2025
2:34 PM

Nos. 363892; 368301
Wayne Probate Court
LC No. 2012-781611-TV

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] appellants appeal as of right two probate court orders pertaining to a trust established by Dr. Geraldine Hardy, who died in 2018. In Docket No. 363892, we reverse the November 2, 2022 order interpreting the 2012 restated trust, and remand to the probate court for further proceedings consistent with this opinion. In Docket No. 368301, we vacate the probate court's October 6, 2023 opinion and order and order.

---

[1] *In re Geraldine M. Hardy Trust*, unpublished order of the Court of Appeals, entered March 20, 2024 (Docket Nos. 363892 and 368301).

# I. FACTS AND PROCEDURAL HISTORY[2]

Dr. Hardy had no children. Therefore, appellants, Pamela Melton and Jerome McDaniel, Dr. Hardy's niece and nephew, are her heirs at law. In 1977, Dr. Hardy executed a trust (the 1977 trust) that named "the medical school, University of South Carolina, Charleston, South Carolina," as its sole beneficiary for the purpose of establishing "the GERALDINE McDANIEL, M.D. CHAIR to deal with the study of the psychiatry of women." The trust was funded with ten dollars. Dr. Hardy intended to fund the trust with a pour-over will.

Dr. Hardy stopped practicing medicine in 2006 and later surrendered her medical license. In 2010, Melton discovered that Dr. Hardy was suffering from dementia and living in a "hoarder-house." In 2011, the probate court appointed Laura Kystad as Dr. Hardy's conservator and guardian. In her investigation of Dr. Hardy's financial status, Kystad discovered that "nobody could find an executed copy of [Dr. Hardy's] will, which should have funded her trust." Kystad petitioned the probate court for authority to restate the trust in order to fulfill Dr. Hardy's intentions to leave a substantial gift to a medical school in South Carolina. Kystad advised the probate court that she believed Dr. Hardy lacked testamentary capacity, and that Dr. Hardy had apparently failed to execute the pour-over will. Kystad alleged that Dr. Hardy "continue[d] to express the desire to fund the educational pursuits of women in medicine," but opined that Dr. Hardy "presently lack[ed] testamentary capacity." Kystad sought to establish a trust to (1) provide financial support for Dr. Hardy in her lifetime, (2) provide for her heirs at law, (3) reduce or eliminate federal estate tax, and (4) grant the Medical University of South Carolina (MUSC) monies for the advancement of women in medicine.

In July 2012, the probate court held a hearing to approve the 2012 restated trust. The proposed restated trust provided that, at Dr. Hardy's death, the trustee would divide the estate's assets into two trusts: the "Family Trust" and the "Charitable Trust." The Family Trust would receive "a fractional share of the Trust Assets[,]" and the Charitable Trust would receive "the remaining fractional share of the Trust Assets."

Appellants agreed on the record to accept the 2012 restated trust. Dr. Hardy's guardian ad litem (GAL) stated that, during every visit, Dr. Hardy stated, without prompting, "I worked hard all my life, I've earned all of this money and I want all of it to go to this university to pay for women to get through medical school. I don't think I owe a penny to any of my relatives, I don't want them to get anything." Counsel for MUSC stated that Dr. Hardy's estate then held approximately $10 million in assets. If she died at that time, MUSC would receive approximately $5 million. MUSC's counsel requested "a guarantee that [they would] get $5 million regardless" as a minimum distribution. The probate court remarked that administrative costs or tax obligations could reduce the value. Melton's counsel replied that Dr. Hardy was physically healthy and could need financial support for 10 to 15 years. Additionally, changes to the tax code could

---

[2] This is not our first case involving this trust. We previously decided an appeal related to the determination of the correct charitable beneficiary of the trust at issue. In that case, we concluded that appellee, the Medical University of South Carolina (MUSC), was the intended beneficiary. *In re Hardy Trust*, unpublished per curiam opinion of the Court of Appeals, issued October 28, 2021 (Docket No. 351966) (*Hardy I*).

"substantially reduce the amount[] that the hospital would receive." MUSC's counsel opined that, in approving the 2012 restated trust, the probate court was transferring its discretion "to Washington, D.C. to figure out what the university [was] going to get." The trial court authorized the execution of the 2012 restated trust.

Dr. Hardy died in 2018. At this time, a controversy arose regarding whether the 2012 or 2018 federal taxation exemption would be used to calculate the Family Trust's fractional share under Article III of the 2012 restated trust. Appellants petitioned the probate court to distribute the 2012 trust assets under the federal tax exemption in effect in 2018. Under the 2018 exemption, the Family Trust would most likely receive all the 2012 restated trust assets, leaving nothing for MUSC's charitable trust. On the other side, MUSC petitioned the probate court to reform or void the 2012 restated trust under MCL 700.7415 and MCL 700.7412. Appellants moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), and MUSC moved for summary disposition under MCR 2.116(C)(I) and MCR 2.116(C)(7).

The probate court determined the 2012 restated trust was ambiguous, and, therefore, the calculation of the parties' distribution amounts should include the 2012 federal tax exemption. The probate court did not decide MUSC's petition to reform or void the trust. Appellants appealed this decision, and this Court granted a stay of proceedings pending resolution of the appeal.[3]

After the stay was granted, Kystad petitioned the probate court for instructions regarding sale or retention of real estate assets. Appellants opposed the petition, arguing that this Court's stay order precluded the probate court from considering the petition. The probate court disagreed, citing its retained jurisdiction under MCR 7.208(D), and granted Kystad authority to have the property appraised and to "engage in the process of selling some or all of the real estate." Kystad was required, however, to file a petition for approval of any sale. Appellants then appealed this order.

## II. DOCKET NO. 363892

### A. AMBIGUITY

Appellants argue that the probate court erred in finding that the 2012 restated trust was ambiguous, requiring further interpretation. We agree.

### 1. STANDARD OF REVIEW

"The proper construction of a trust, like the construction of a will, is a question of law subject to de novo review." *Hegadown v Dep't of Human Servs Dir*, 503 Mich 231, 245; 931 NW2d 571 (2019). A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

---

[3] *In re Geraldine M Hardy Trust*, unpublished order of the Court of Appeals, entered April 25, 2023 (Docket No. 363892).

## 2. LAW AND ANALYSIS

"When interpreting trust language, the court's goal is to determine and give effect to the trustor's intent." *LeGassick v Univ of Mich Regents*, 330 Mich App 487, 496; 948 NW2d 452 (2019). The interpretation of trust documents is governed by the same rules applicable to the interpretation of wills. *In re Estate of Reisman*, 266 Mich App 522, 527; 702 NW2d 658 (2005). The settlor's intent "is gauged from the trust document itself, unless there is ambiguity." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008).

There are two types of ambiguity, latent and patent. "A latent ambiguity exists where the language and its meaning is clear, but some extrinsic fact creates the possibility of more than one meaning." *In re Woodworth Trust*, 196 Mich App 326, 328; 492 NW2d 818 (1992). On the other hand, "[a] patent ambiguity exists if an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language." *Id*. at 327-328. The presence of an ambiguity "requires a court to look outside the four corners of a will in order to carry out the testator's intent." *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985) (quotation marks and citations omitted). "Accordingly, if a will evinces a patent or latent ambiguity, a court may establish intent by considering two outside sources: (1) surrounding circumstances, and (2) rule of construction." *Id*. (quotation marks and citations omitted). "Where there is no patent or latent ambiguity in the provisions of a will [or trust], the intention to be ascribed to the testator is that intention demonstrated in the will's plain language." *In re Estate of Reisman*, 266 Mich App at 527 (quotation marks and citation omitted).

The 2012 restated trust, Article III, Section 2 states, in relevant part:

> The Family Trust shall consist of a fractional share of the Trust Assets. The numerator of the fraction shall equal the largest value of the Trust Assets that can pass free of federal estate tax by reason of the unified credit and the credit for state death taxes . . . allowable to Grantor's estate, after [enumerated reductions] . . . . The denominator of the fraction shall equal the value of the Trust Assets as finally determined for federal estate tax purposes.

On one hand, the phrase "[t]he numerator of the fraction *shall* equal" could be construed as contemplating that the numerator will be determined in the future. "The word 'shall' denotes the future tense," and, when used in a statute, "indicates a prospective operation unless accompanied by other words indicating a contrary intention." *People v Lowell*, 250 Mich 349, 364-365; 230 NW 202 (1930). We acknowledge that a nearly 100-year-old case is not determinative in construing the 2012 restated trust. "[T]his Court may not be strictly bound to follow older published cases, but traditionally regards them as retaining some authority, at least if they were not disputed by some other contemporaneous case." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018). More typically, and more recently, the word "shall" has been construed to indicate an action is mandatory rather than permissive. *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). However, the phrase "the largest value of the Trust Assets *that can pass free of federal estate tax*" more clearly contemplates a future determination, because assets could not pass into the Family Trust until the settlor died.

-4-

For the language to be ambiguous, it would have two support two different meanings: (1) that the numerator of the fraction for determining the value of the Family Trust is the amount that will be able to pass free of estate tax when the settlor dies; or (2) that the numerator is the amount that would pass free of estate tax if the settlor died at the time the trust was executed. Even if the future-tense meaning of "shall" were disregarded in favor of the mandatory/must meaning, Article III would still derive the numerator from "the largest value . . . that can pass free of the federal estate tax." There is no language in the 2012 restated trust that fixes the numerator as the value that would pass free of the federal estate tax if Dr. Hardy died in 2012. Thus, the language supports only the first meaning. The court erred in finding ambiguity and in resolving the issue in MUSC's favor.

## B. TRUST REFORMATION

Appellants next argue that reformation of the 2012 restated trust was improper under MCL 700.7412 and MCL 700.7415. While these issues were raised in the proceedings below, the probate court did not specifically consider them, because it found the 2012 restated trust ambiguous. Because our opinion reverses that conclusion, we remand this issue to the probate court for a decision on whether reformation is appropriate.

## II. DOCKET NO. 368301

## A. STAY OF PROCEEDINGS

Appellants argue that the probate court erred in deciding Kystad's petition for instructions regarding real estate after this Court imposed a stay of proceedings in Docket No. 363892. We agree and vacate the probate court's October 6, 2023 opinion and order on petition for instructions and order for instructions.

## 1. STANDARD OF REVIEW

The probate court interpreted this Court's order as being limited to the enforcement of its prior order interpreting the trust. "Interpreting the meaning of a court order involves questions of law that we review de novo on appeal." *Citizens for Higgins Lake Legal Levels v Roscommon Co Bd of Comm'rs*, 341 Mich App 161, 177; 988 NW2d 841 (2022). "Courts should interpret the terms in a judgment in the same manner as courts interpret contracts." *AFT v State*, 334 Mich App 215, 236; 964 NW2d 113 (2020).

## 2. LAW AND ANALYSIS

MCR 7.208(A) provides:

> After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except
>
> (1) by order of the Court of Appeals,
>
> (2) by stipulation of the parties,

(3) after a decision on the merits in an action in which a preliminary injunction was granted, or

(4) as otherwise provided by law.

In probate matters, "[t]he probate court retains continuing jurisdiction to decide other matters pertaining to the proceeding from which an appeal was filed." MCR 7.208(D). "[A]n appeal does not stay the effect or enforceability of a judgment or order of a trial court unless the trial court or the Court of Appeals otherwise orders." MCR 7.209(A)(1).

The probate court relied on MCR 7.208(D) in finding that this Court's stay order did not preclude it from deciding "other matters pertaining to the proceeding from which an appeal was filed." *Id.* However, MCR 7.208(D) is a rule of general application. It does not reference the circumstance in which this Court orders a stay of proceedings. This Court's order states, "further proceedings are STAYED pending resolution of this appeal or further order of this Court." *In re Hardy Trust*, order of the Court of Appeals, entered April 25, 2023 (Docket No. 363892). The statement imposes a general preclusion of "further proceedings," without qualification or limitation. Moreover, appellants' motion for a stay specifically addressed concerns that Kystad's actions relating to real property assets would impair their interest. We therefore conclude that the probate court erred in finding that it was permitted to decide Kystad's petition.

## B. SALE OF REAL ESTATE

Appellants argue the probate court abused its discretion in granting Kystad's petition to sell certain real estate. In light of this Court's order staying the proceedings, the probate court was not entitled to move forward with the sale. And because this opinion dissolves our earlier stay order, *In re Geraldine M Hardy Trust*, unpublished order of the Court of Appeals, entered April 25, 2023 (Docket No. 363892), we need not reach the question of whether the trial court erred in granting Kystad's petition.

The probate court's order in Docket No. 363892 is reversed; the probate court's October 6, 2023 opinion and order and order in Docket No. 368301 are vacated; and this case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica

-6-